**14 CV 4744**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ECEIVE

JUN 2 6 2014

U.S.D.C. S.D. N.Y.

JUDGE KAPLA...

---

MICHELLE CLINE and KELLY ENGSTROM,
Individually and On Behalf Of All Others
Similarly Situated,

Plaintiffs,

vs.

TOUCHTUNES MUSIC CORPORATION,

Defendant.

Index No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMAND**

---

Plaintiffs Michelle Cline and Kelly Engstrom ("Plaintiffs"), by their undersigned attorneys,

bring this class action complaint against TouchTunes Music Corporation ("TouchTunes" or the

"Company"). Plaintiffs' allegations are based upon knowledge as to their own acts and upon

information and belief as to all other matters. Plaintiffs' information and belief is based upon,

among other things, a comprehensive investigation undertaken by their attorneys, which included,

without limitation: (a) interviews of witnesses; (b) review of TouchTunes' published materials and

information available on the internet; (c) analysis of public records and documents, including the

Company's policies, software, terms, and materials; and (d) an exhaustive analysis and field testing

of the TouchTunes user platform and hardware. Plaintiffs believe that substantial evidentiary

support will exist for the plausible allegations set forth herein, which will be further evidenced after

a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action against TouchTunes for violations of the New York General

Business Law ("GBL") § 349 ("Deceptive Acts and Practices") and § 350 ("False Advertising

Unlawful"), breach of the implied covenant of good faith and fair dealing, and unjust enrichment.

Plaintiffs and members of the class (the "Class") include current and/or former paying users of TouchTunes' digital jukebox services who were damaged by the acts described herein.

2.      TouchTunes touts itself to be the largest in-venue interactive music and entertainment platform, which represents itself to offer "pay-for-play" digital jukebox services. To offer these services, the Company contracts with venues in which TouchTunes' digital jukebox hardware is installed and maintained.

3.      Consumers in these venues have the option to select their songs either manually, paying with cash or credit card at the physical jukebox within a venue, or through the Company's mobile application, where consumers can select and pay to play a song from their own mobile device by credit card.

4.      As part of the mobile application option, TouchTunes has created a multi-application platform called myTouchTunes (the "App"), for consumers to select, pay for, and listen to a song in the venue of their choice through an account personally registered through the consumer's e-mail address.

5.      As alleged herein, TouchTunes violated the GBL by taking advantage of its unwitting consumers (including Plaintiffs and Class members) by knowingly advertising itself as offering a "pay-for-play" digital jukebox services, when in fact, TouchTunes consumers have no control over whether their selected, purchased song will actually play in the venue. Indeed, the Company does not disclose to consumers that: venue owners and operators maintain unfettered discretion to skip purchased songs with no refund to the consumer or restoration of credits; despite knowing whether a paid-for song was actually played, failing to provide refunds or credit restoration where possible; allowing songs to be purchased despite knowing a jukebox is off or out-of-service; or that the length of a queue will effectively prevent a paid-for song from being played within a reasonable time.

6.      By operating a "pay-for-play" jukebox service that is specifically designed to take payment without regard to whether songs are played, and in fact building in tools to specifically prevent songs from being played, and then failing to issue refunds or credit restoration were possible, TouchTunes is actively deceiving consumers.

7.      Plaintiffs, on their own behalves and as representatives of the Class, seek to recover compensatory damages in the amount of fees paid for song selections purchased but not played: (a) through the TouchTunes App; or (b) from physical jukeboxes purchased by credit card.

8.      Plaintiffs also seek injunctive relief, on their own behalves and as representatives of the Class, ordering cessation of the wrongful and deceptive practices and advertising, implementation of administrative changes designed to remedy current and future deception, improved disclosure to TouchTunes consumers and prospective consumers regarding the authority given to a venue to skip the selected song, cessation of TouchTunes' actual, wrongful practices including the failure to refund consumers or restore credits for un-played songs as complained of herein, and revision of the language of the Company's User Agreement so as to make its terms clear and easily accessible to Class members.

## JURISDICTION AND VENUE

9.      This Court has diversity subject-matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. §1332, at subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed Class; (b) at least some members of the proposed Class have a different citizenship from TouchTunes; and (c) the claims of the proposed Class members exceed the sum or value of five million dollars ($5,000,000) in the aggregate. *See* 28 U.S.C. §1332(d)(2) and (6).

10.     This Court has personal jurisdiction over the parties because Plaintiffs submit to the jurisdiction of the Court, TouchTunes is headquartered in the State of New York, TouchTunes transacts business within the State of New York, and by virtue of the fact that TouchTunes' executive offices are located in the State, TouchTunes systematically and continually conducts business throughout the State of New York, including the Southern District, in New York City.

11.     Venue is proper in the Southern District of New York because TouchTunes is headquartered in this District, conducts substantial business in this District, maintains offices in this District, and because certain of the acts or omissions instituting policies and procedures affecting Class members occurred in this District.

## PARTIES

12.     Plaintiff Michelle Cline is a resident of North Dakota and, at all relevant times, was a paying consumer of TouchTunes' pay-for-play jukebox services.

13.     Plaintiff Kelly Engstrom is a resident of Montana and, at all relevant times, was a paying consumer of TouchTunes' pay-for-play jukebox services.

14.     Defendant TouchTunes Music Corporation is a Delaware corporation that maintains its headquarters and principal place of business in New York, New York.  TouchTunes is a registered foreign business corporation operating in the state of New York, with a principal executive office maintained at 850 Third Avenue, Suite 15C, New York, New York 10022. Consumers pay TouchTunes a per-song fee to play the selected song at any TouchTunes associated venue across the country.

## CLASS ACTION ALLEGATIONS

15.     Plaintiffs bring this class action, on their own behalf and on behalf of all similarly situated individuals, under the provisions of Rule 23(a) and 23(b)(3) who:

    a.  at any time between May 30, 2010 to October 28, 2013[1], purchased a song through TouchTunes' "pay-for-play" jukebox service App, which was not played because it was skipped or otherwise interfered with, and no refund was issued ("App users"); or

    b.  at any time between May 30, 2010 to present, purchased a song through TouchTunes' "pay-for-play" jukebox service from a TouchTunes equipped venue's onsite jukebox, which was not played because it was skipped or otherwise interfered with, and no refund was received ("Non-App users").

16.    Plaintiffs also bring this action as a class action pursuant to Rules 23(a) and (b)(3) on behalf of themselves and two subclasses of Non-App users who:

    a.  purchased a song through TouchTunes' "pay-for-play" jukebox service from a TouchTunes equipped venue's onsite jukebox using a credit card ("Credit Card Subclass"); or

    b.  purchased a song through TouchTunes' "pay-for-play" jukebox service from a TouchTunes equipped venue's onsite jukebox using physical cash ("Cash Subclass").

17.    This action is properly maintainable as a class action.

18.    The Class is so numerous that joinder of all members is impracticable.

19.    The number and identities of Class members can easily be determined from the records maintained by TouchTunes and/or its agents. The disposition of their claims in a class action will be of benefit to the parties and to the Court.

---

[1]  The Class Period end-date reflects the date after which TouchTunes amended its App User Agreement to include an arbitration clause and class action waiver. Members in this Class are not presently asserting claims arising after that date. However, if the User Agreement is deemed void for any reason, Plaintiffs reserve the right to extend Class Period to the present date.

20.     A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, and no unusual difficulties are likely to be encountered in the management of this action as a class action.   The likelihood of individual Class members prosecuting separate claims is remote.

21.     There is a well-defined community of interest in the questions of law and fact affecting members of the Class.   Among the questions of law and fact common to the Class, and which predominate over questions affecting any individual Class member are, *inter alia*:

  a.  Whether TouchTunes violated § 349 of the GBL by taking advantage of unwitting consumers' understanding of "pay-for-play" jukebox services by misleadingly and deceptively retaining payments received for songs which were not played, without notice to App users and/or Non-App users that venue owners and operators were authorized to skip purchased songs;

  b.  Whether TouchTunes violated § 350 of the GBL by misleadingly and deceptively advertising "pay-for-play" jukebox services, while knowingly retaining payments received for songs purchased which were not played, without notice to App users and/or Non-App users that venue owners and operators were authorized to skip purchased songs;

  c.  Whether TouchTunes breached its common law covenants with Plaintiffs and others similarly situated by: (i) failing to provide the service represented by TouchTunes and understood by Plaintiffs and Class members to be a legitimate offering of "pay-for-play" jukebox services; (ii) by otherwise acting in bad faith in failing to deliver the bargained for service; (iii) by being unjustly enriched for failing to return payments made for songs which were not played; and (iv) for otherwise engaging in deceptive marketing and business activity that harmed Plaintiffs and Class members.

22.     Plaintiffs are members of the Class and committed to prosecuting this action. Plaintiffs have retained competent counsel experienced in litigation of this nature. Plaintiffs' claims are typical of the claims of the other Class members in that they seek compensatory damages for TouchTunes' violations of the GBL, unjust enrichment, and breach of implied common law covenants by TouchTunes' conduct as alleged herein, the same claims being asserted on behalf of each individual Class member. Plaintiffs do not have interests antagonistic to or in conflict with those they seek to represent. Plaintiffs, therefore, are adequate representatives of the Class.

23.     The likelihood of individual Class members prosecuting separate individual actions is remote due to the relatively small loss suffered by each Class member as compared to the burden and expense of prosecuting litigation of this nature and magnitude. Absent a class, TouchTunes is likely to avoid liability for its wrongdoing, and the Class members are unlikely to obtain redress for the wrongs alleged herein.

24.     Adjudication of this case on a class-wide basis is manageable by this Court. The purchases made by Plaintiffs and each Class member throughout the United States are the same or so similar as to be legally and factually indistinguishable in all material respects. TouchTunes' App maintains an electronic record of songs play, those skipped, and payments made by App users. As a result, it will not be difficult for the Court or the jury to determine whether TouchTunes has breached its duties with respect to each of the Class members. This Court is an appropriate forum for this dispute.

## FACTUAL ALLEGATIONS

25.     TouchTunes claims to be the largest in-venue interactive music and entertainment platform, which represents itself to offer "pay-for-play" digital jukebox services.

26.     According to the TouchTunes website, consumers pay for their jukebox selections on TouchTunes devices at "over 60,000 bars and restaurants across North America." The Company

contracts with venues in which TouchTunes' digital jukebox hardware is installed and maintained by TouchTunes.

**Non-App Users**

27.    Consumers, wishing to hear a song at a TouchTunes equipped venue, can select and pay for songs at physical jukebox devices.

28.    Digital jukeboxes permit consumers to pay for credits, to be redeemed for song selections, by cash or credit card.  The average song purchase from the jukebox will cost between 1 and 4 credits, with per credit prices varying by venue and song selection.

29.    The jukebox screen shows consumers the queue of selected songs as they make their choice and the number of credits the consumer has purchased in the right hand corner.

30.    Notably, no User Agreement or terms of use screen appears.

31.    By purchasing "credits" at the jukebox by cash or credit card, to be redeemed for "pay-for-play" song selections, Plaintiffs and Class members became TouchTunes consumers.

32.    By purchasing "credits" at the jukebox by cash or credit card, to be redeemed for "pay-for-play" digital jukebox selections, and making song selections, Plaintiffs and Class members performed or tendered performance.

**App Users**

33.    Consumers also have the option of purchasing song selections by downloading the Company's App from the iTunes App Store.  TouchTunes claims that since launching the App, Consumers have downloaded it over 2 million times, enabling App users to "choose and pay for music on the jukebox directly from their smartphones" at TouchTunes enabled venues.

34.    To avail themselves of the Company's "pay-for-play" digital jukebox services through the App, consumers log in to their account using their personal e-mail, and can proceed to purchase credits to redeem for song selections at their chosen venue.

35.     While downloading the App is free through iTunes, to make song selections using the App, the consumer will create an account from a personal e-mail address.  Selection of songs requires the consumer to enter debit or credit card billing information, which is stored in the App, and select a set number of credits, which thereafter can be redeemed for song selections also made on the App.  The average song purchase through the App will cost between 1 and 4 credits, with per credit prices varying by venue and song selection.

36.     By downloading the TouchTunes App, and purchasing "credits" through the App to be redeemed for "pay-for-play" digital jukebox selections, Plaintiffs and Class members became TouchTunes consumers.

37.     By purchasing "credits" through the App, to be redeemed for "pay-for-play" digital jukebox selections, and making song selections, Plaintiffs and Class members performed or tendered performance.

**Misrepresentations to App Users**

38.     In the event a paid-for song, purchased through the App, does not play, the App user can see that the song was not played as the App will commonly return an error message.

39.     Upon information and belief, the generation of such a message, visible to the App user, also creates a unique electronic code which is transmitted to TouchTunes.  This electronic string is associated with the failure to play the selected song.  As such, TouchTunes' App software is already equipped to identify songs which are not played for any reason, and TouchTunes receives this information.

40.     Upon information and belief, TouchTunes maintains records of these electronically generated errors through the codes they generate.

41.     Despite the consumer's knowledge by either not hearing a selected song or seeing the generated error message, the creation of the electronic code by the App, and the code's

transmittal to TouchTunes conveying that an error has occurred, no refund or credit restoration to the consumer is issued.

42.     Effectively, the TouchTunes App recognizes that the paid-for song has not been played, yet TouchTunes knowingly retains these funds – despite possessing, through the App, all the requisite account and payment data to refund the consumer's unrealized purchase instantly.

**Venue Remote Control**

43.     Unbeknownst to TouchTunes consumers, the TouchTunes hardware installed in each venue also provides the venue owner or operator the unfettered ability to skip the song a consumer has selected and paid for, by use of a remote control.

44.     The remote control is labeled with TouchTunes' logo.

45.     When the venue owner or operator exercises use of the remote control to skip songs, the venue's physical jukebox flashes "Skipped" across the screen, suggesting that the TouchTunes software recognizes and generates an electronic code for this action.

46.     The Remote Control User's Guide (the "User Guide") provides no standards or guidance to venue owners or operators regarding the proper use of the remote.  However, the User Guide provides that the functions of the remote include "skip song" and "flush play queue."

47.     During times when no consumer paid-for songs are playing or in queue, the TouchTunes hardware reverts to an auto-play mode cycling various TouchTunes content.  However, during this auto-play period, the functions of the remote control cannot be used to skip songs which were not paid for by TouchTunes consumers.  Only those songs purchased by TouchTunes consumers can be skipped or flushed from the queue.

48.     When a venue owner or operator exercises use of the remote, enabled by the TouchTunes hardware and in accordance with the User Guide, the consumer is not refunded nor reimbursed credits for the un-played song.

49.     No additional instructions appear on the remote itself, nor are any instructions provided in the User Guide for refunding a skipped song.  No additional instructions appear on the TouchTunes hardware or in the App to be refunded for songs skipped by use of the remote control.

50.     In fact, individual venues do not have access to the funds deposited into a TouchTunes jukebox, electronically, by credit card, or in cash, and cannot therefore refund the consumer for a skipped song, even if desired.

51.     TouchTunes dispatches individuals to TouchTunes venues to open and service the physical jukeboxes, collect the funds deposited, and provide venues their portion of the proceeds.

52.     As such, there is no warning to consumers that their song may be skipped by virtue of TouchTunes' hardware design, and in the event that a song is skipped, despite TouchTunes' immediate knowledge of this fact, no refund is provided.

53.     Non-App users who pay for their credits at the physical jukebox using credit cards are not refunded when their songs are skipped, despite TouchTunes' possession of the consumer's billing information and ability to do so.

54.     Similarly, App users who pay for their credits using the Company's App are not refunded or restored credits when their songs are skipped, despite TouchTunes' possession of the consumer's account information and ability to do so.

55.     As a result, TouchTunes has knowingly created and distributed hardware that permits the unfettered skipping of purchased songs from a "pay-for-play" jukebox, while retaining the funds paid by consumers.

**The Misleading User Agreement**

56.     Non-App users do not have the option of viewing or consenting to any user agreement on the physical jukebox.

57.     For App users, there is no option or requirement that consumers consent or agree to the terms of TouchTunes App's User Agreement to download the App, create an account, make credit purchases, or select songs using the App.

58.     This passive User Agreement is also difficult to access on the App itself, and likely goes unseen by App users.  It can only be found if an App User goes to the tab containing his or her own "Profile" information, then to the "Help" option, then to "Terms of Use."

59.     Under the terms of the App's User Agreement, TouchTunes disclaims responsibility for "factors, including the inherent unreliability of the Internet" or the "inaccessibility or technical failure of my TouchTunes" which may prevent a song from being played.

60.     The foregoing provisions of the User Agreement fail to provide any reasonable App user notice that TouchTunes' hardware and App software was designed to permit the skipping of paid-for songs or flushing of a queue, without refund or restoration of credit to the consumer.

61.     Moreover, nowhere in the User Agreement does the Company provide notice that the venue owner or operator has the capability and discretion to skip a paid-for song selection or flush the queue with no refund or restoration of credit to the TouchTunes consumer.

62.     Similarly, the User Agreement fails to acknowledge that TouchTunes is aware, through electronically generated codes transmitted to TouchTunes, when a purchased song does not play for any reason.  If a jukebox is broken, idle, or offline, and the App generates an error message that the selected song has not played, still no refund or restoration of credit is issued.

63.     As such, it is by *design* and not error – or absurdly, the "inherent unreliability of the internet" – that TouchTunes is unjustly enriched by consumer's payments, made in anticipation of "pay-for-play" digital jukebox services, when none are delivered.

64.     Further, by giving venue owners or operators the ability to skip a paid-for song by use of the TouchTunes hardware, TouchTunes knowingly permits additional circumstances to exist

under which "pay-for-play" digital jukebox services will not be delivered to paying consumers, and yet no refund or restoration of credit is issued.

65.     The Company's practice is additionally deceptive under the circumstances that it possesses the consumer's account and billing information through the App, and has the ability to easily issue a refund or restore credits for unplayed songs.

66.     A reasonable App user, assuming they could even locate the User Agreement within the App, is not provided notice that TouchTunes, through its hardware and App software, has a uniform policy, practice, and design to accept consumers' payments for "pay-for-play" digital jukebox services, regardless of whether the paid-for song is played.

67.     Further, the reasonable consumer has no notice that the Company's hardware within a TouchTunes equipped venue permits the skipping of paid-for songs without refund or restoration of credit.

68.     TouchTunes' representation that it will deliver "pay-for-play" digital jukebox services is, in fact, false in each and every circumstance where payment is accepted and the consumer's selection is not played.

69.     As such, TouchTunes engages in fraudulent or misleading business practices to induce Class consumers to purchase "pay-for-play" digital jukebox services, where the Company has designed an App to accept and retain consumer's payments, regardless of whether their song selection is played.

**Plaintiffs and Class Members**

70.     By virtue of their status as paying TouchTunes consumers whose song selections were not played, Plaintiffs and other Class members were subjected to TouchTunes' deceptive conduct as alleged herein.

71.     Plaintiff Michelle Cline was a TouchTunes App user and Non-App user at a number of TouchTunes enabled locations in Montana between June and July of 2013.

72.     In 2013, at the Eagles Lodge, located in Bozeman Montana, using the App, Ms. Cline selected a song from the "Set It Off" soundtrack that apparently had recently played in the venue.  When the song began, the bartender used the remote control and skipped the song.

73.     At some point during the summer of 2013, Ms. Cline also recalls paying cash at a physical TouchTunes jukebox at the Eagles Lodge to select an AC/DC song that was also skipped by someone at the venue using the remote control.

74.     Ms. Cline has reported regularly witnessing the skipping of paid-for songs at the Eagles Lodge by use of the venue's remote control.

75.     Similarly, Ms. Cline also witnessed selections made at the TouchTunes jukebox at Molly Brown's located in Bozeman Montana, where credits she purchased were not applied, and her song selection from the Marshall Tucker Band was skipped.  Ms. Cline also witnessed use of the remote control at Molly Brown's to other songs paid for in cash at various times before October 2013.

76.     Ms. Cline deleted the App from her phone in the fall of 2013.

77.     Plaintiff Kelly Marudas is a Non-App user, who paid in cash for song selections, at a number of TouchTunes enabled locations in Boseman, Montana.

78.     Ms. Marudas has been a Non-App user since several local establishments installed TouchTunes jukeboxes, and over the course of several years has witnessed the skipping of paid-for songs selected by her and other consumers.

79.     At the Crystal Bar in Bozeman, Montana, Ms. Marudas has reported repeatedly witnessing the skipping of paid-for songs by use of the venue's remote control, including her own

selections, over the past several years. Most recently, Ms. Marudas had paid-for song selections skipped by use of the venue's remote control in May 2014.

80.     Ms. Marudas was also a Non-App user at The Cannery in Bozeman, Montana, and regularly witnessed the skipping of paid-for songs, specifically during happy hour, over the course of the approximately three years that The Cannery has had the TouchTunes jukebox. Ms. Marudas recalls witnessing the use of the remote control to skip song selections, including her own.

81.     Ms. Marudas was a Non-App user at Haufbrau in Bozeman, Montana, where she also witnessed routine use of the remote control to skip paid-for song selections, including her own, over the past year.

82.     Further, Haufbrau is a bar that frequently has live musical guests. As such, when live music would begin, the venue had no option but to simply turn off the jukebox, despite the fact that consumers, including Ms. Marudas, who paid for TouchTunes song selections would not hear their songs, nor did they receive a refund or restoration of credits for their selections. Ms. Marudas specifically recalls this happening at a birthday she attended at Haufbrau, during the winter of 2014.

83.     Ms. Marudas also did not hear her paid-for songs at these locations when she selected, and paid additional credits, to hear her song using the "play next" function. The "play next" function gave Ms. Marudas no indication how many other consumers had paid additional credits to *also* have their song selection be played next in the cue. Thus, because TouchTunes allows multiple consumers to pay additional credits for the "play next" function at any given time, Ms. Marudas' payment of additional credits often resulted in still waiting several songs to hear her selection, if it was played at all.

84.     As a result of the foregoing, Plaintiffs and Class members suffered damages including, but not limited to, the cost of their un-played song purchases through TouchTunes.

## COUNT I

### *Violation of New York General Business Law § 349: Deceptive Acts And Practices*

85.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

86.     TouchTunes's wrongful conduct described herein constitutes a violation of GBL § 349 ("Deceptive Acts and Practices").  Plaintiffs and Class members are consumers, as described in § 349, who purchased "pay-for-play" digital jukebox services through TouchTunes.

87.     TouchTunes misleadingly and deceptively failed to provide notice to Plaintiffs and Class members that venue owners and operators were equipped to skip their songs, denying them the "pay-for-play" digital jukebox services they paid TouchTunes to receive.

88.     TouchTunes misleadingly and deceptively failed to provide notice to Plaintiffs and Class members that its services are designed to take consumers' payments, despite denying them "pay-for-play" digital jukebox services, when a paid-for song was not played.

89.     TouchTunes' conduct described herein was materially misleading to any consumer who purchased "pay-for-play" digital jukebox services through TouchTunes, anticipating reasonably that the TouchTunes App was not designed to take payment when a paid-for song was not played.

90.     Plaintiffs and Class members, as those who purchased "pay-for-play" digital jukebox services through TouchTunes and the song was not played,  suffered economic damages as a direct and/or producing result of the Company's past and ongoing violations of the GBL.   Plaintiffs and Class members, therefore, are entitled to economic damages and treble damages for TouchTunes's knowing violations; injunctive relief; and attorneys' fees, litigation expenses, and court costs.

## COUNT II

### *Violation of New York General Business Law §350: False Advertising Unlawful*

91.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

92.     TouchTunes's wrongful conduct described herein constitutes a violation of GBL § 350 ("False Advertising Unlawful").  Plaintiffs and Class members are consumers, as described in § 350, who purchased "pay-for-play" digital jukebox services through TouchTunes.

93.     TouchTunes misleadingly and deceptively advertises "pay-for-play" digital jukebox services despite the reality that venue owners and operators are equipped to skip consumers' songs, denying them the "pay-for-play" digital jukebox services they paid TouchTunes to receive.

94.     TouchTunes misleadingly and deceptively advertises "pay-for-play" digital jukebox services despite the reality that its hardware and software were designed to maintained consumers' payments, despite denying them "pay-for-play" digital jukebox services, when a paid-for song was not played.

95.     TouchTunes' conduct described herein was materially false, as those who purchased "pay-for-play" digital jukebox services through TouchTunes, anticipated reasonably that payment would result in their selected song playing and/or that TouchTunes was not designed to accept payment for songs which could not or would not be played.

96.     Plaintiffs and Class members, as those who purchased "pay-for-play" digital jukebox services through TouchTunes and the song was not played,  suffered economic damages as a direct and/or producing result of the Company's past and ongoing violations of the GBL.   Plaintiffs and Class members, therefore, are entitled to economic damages and treble damages for TouchTunes's knowing violations; injunctive relief; and attorneys' fees, litigation expenses, and court costs.

## COUNT III

### *Breach of the Duty and/or Implied Covenant of Good Faith and Fair Dealing*

97.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

98.     By paying TouchTunes for its "pay-for-play" digital jukebox services, Plaintiffs and Class members were owed a duty of good faith and fair dealing by TouchTunes under common law.

99.     TouchTunes possessed information regarding the design of its hardware, capabilities of its vendor hardware, and software, which it failed to disclose to Plaintiffs and Class members that materially altered the quality and value of the services purchased by consumers.

100.     As demonstrated by the above-described and enumerated wrongful acts and practices, TouchTunes's exploitation of Plaintiffs' and Class members' lack of knowledge about TouchTunes software and hardware, failure to disclose this information in the App User Agreement, failure to deliver the promised products and services as contracted for, and the repeated, ongoing, deceptive manipulation of Plaintiffs' and Class members for financial gain – which was the direct, proximate and/or producing cause of the damages Plaintiffs and Class members have suffered – collectively constituted breaches of the duty of covenant of good faith and fair dealing and/or breaches of the implied covenant of good faith and fair dealing at common law—for which Plaintiffs and Class members are entitled to compensation.

## COUNT IV

### *Unjust Enrichment*

101.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

102.    TouchTunes profited and derived benefits from engaging in the wrongful conduct set forth above with respect to their breach of duties under the GBL and at common law.  Therefore, TouchTunes is not justified in retaining those profits and benefits conferred upon the Company.

103.    As a direct and proximate result of that wrongful conduct by TouchTunes, Plaintiffs have suffered and continue to suffer substantial harm.

104.    TouchTunes' enrichment is directly and casually related to Plaintiffs' detriment.

105.    The profits and benefits retained by TouchTunes were accepted under such circumstances that it would be inequitable for it to be retained by the Company.

106.    By reason of the foregoing, Plaintiffs and the Class are entitled to a money judgment as against TouchTunes in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, on behalf of themselves and the Class members, respectfully request that (i) this action be certified as a class action, (ii) Plaintiffs be designated the Class Representatives, and (iii) Plaintiffs' Interim Lead Counsel be appointed as Class counsel.  Plaintiffs, on behalf of themselves and the Class members, further request that upon final trial or hearing, judgment be awarded against TouchTunes in favor of Plaintiffs and Class members, for:

(i)     actual damages in an amount to be determined by the trier of fact;

(ii)    treble damages;

(iii)   equitable relief as set forth above;

(iv)    injunctive relief as set forth above;

(v)     pre- and post-judgment interest at the highest applicable legal rates;

(vi)    attorneys' fees and litigation expenses incurred through the trial and any appeals;

(vii)   costs of suit; and

(viii)  such other and further relief that this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs and members of the Class demand a trial by jury of all issues so triable.

Dated:  June 26, 2014

Respectfully submitted,

**NEWMAN FERRARA LLP**

By:_____

Jeffrey M. Norton
Courtney F. Chenette
1250 Broadway, 27th Fl.
New York, NY 10001
Tel.: (212) 619-5400
Fax: (212) 619-3090
jnorton@nfllp.com
cchenette@nfllp.com

*Counsel for Plaintiffs
and the Proposed Class*