# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MICHELLE CLINE and KELLY ENGSTROM,
Individually and On Behalf Of All Others
Similarly Situated,

                    Plaintiffs,

      vs.

TOUCHTUNES MUSIC CORPORATION,

                  Defendant.

Index No.: 14 Civ. 4744 (LAK)

 

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

**NEWMAN FERRARA LLP**
Jeffrey M. Norton
Courtney F. Chenette
1250 Broadway, 27th Floor
New York, New York 10001
Tel: 212-619-5400
Fax: 212-619-3090

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 4

PROCEDURAL HISTORY ............................................................................................ 10

ARGUMENT .................................................................................................................. 11

   I.  PLAINTIFFS PROPERLY ASSERT CLAIMS UNDER NEW YORK CONSUMER
      PROTECTION LAWS .......................................................................................... 11

      A.  TouchTunes Own Terms Of Use Agreement Requires The Application Of
           New York Law And States New York Based Deception ........................................ 11

      B.  Deception Is Sufficiently Pleaded .......................................................................... 17

      C.  TouchTunes Terms Of Use Are Materially Misleading .......................................... 20

      D.  Plaintiffs Have Similarly Pleaded Sufficient Facts For False Advertising .............. 23

      E.  Plaintiffs Properly Plead The Credit-Expiration Allegations As Yet Another
           Factual Basis For Their GBL Claims ...................................................................... 24

           1.  Plaintiffs Plead Credit-Expiration Facts As An Additional Basis For Their
                GBL Claims ...................................................................................................24

           2.  TouchTunes Failure To Meet The Disclosure Requirements Under The
                CARD Act Coupled With Its Ongoing Deceptive Practices State A Cause
                Of Action.......................................................................................................26

           3.  Plaintiffs' Typicality Is An Inquiry Reserved For Certification ........................29

   II.  PLAINTIFFS' COMMON LAW CLAIMS ARE WELL PLEADED ......................... 30

      A.  Plaintiffs Allege That the Terms of Use Agreement Is A Contract Sufficient
           To Support A Breach Of Good Faith And Fair Dealing Claim ............................... 30

      B.  Plaintiffs' Unjust Enrichment Claims Is Well Pleaded in the Alternative ............... 31

           1.  TouchTunes Does Not, And Can Not, Disclaim Its Deceptive Scheme ...........32

2.   Consumers Did Not Receive What They Bargained For ...................................33

III. ANY PURPORTED INSUFFICIENCY SHOULD BE PERMITTED AN
OPPORTUNITY TO CURE ........................................................................................ 34

CONCLUSION ...................................................................................................................... 35

## TABLE OF AUTHORITIES

**CASES:**                                                                                           **Page**

*4 K & D Corp. v. Concierge Auctions, LLC*,
    2014 WL 904451 (S.D.N.Y. Mar. 10, 2014) .......................................................................15

*Broder v. MBNA Corp.*,
    722 N.Y.S.2d 524 (1st Dep't 2001) .................................................................................21

*Cabot Corp. v. S.S. Mormacsan*,
    441 F.2d 476 (2d Cir.1971)...........................................................................................15

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)..........................................................................................27

*Chiste v. Hotels.com L.P.*,
    756 F. Supp. 2d 382 (S.D.N.Y. 2010)..................................................................13, 14, 22

*City of Syracuse v. R.A.C. Holding*,
    685 N.Y.S.2d 381 ........................................................................................................33

*Costigan v. CitiMortgage, Inc.*,
    2011 WL 3370397 (S.D.N.Y. Aug. 2, 2011) .......................................................................12

*Cox v. Microsoft Corp.*,
    778 N.Y.S.2d 147 (1st Dep't 2004) .................................................................................32

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013)......................................................................................15, 16

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir.2013)........................................................................................21, 31

*Finn v. Barney*,
    471 F. App'x 30, 32 (2d Cir. 2012) .................................................................................28

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
    2014 WL 1285137 (S.D.N.Y. Mar. 27, 2014) ..................................................................21, 31

*Goldman v. Simon Prop. Grp., Inc.*,
    869 N.Y.S.2d 125 (2d Dep't 2008).............................................................................31, 32, 33

*Goshen v. Mut. Life Ins. Co. of New York*,
    98 N.Y.2d 314 (2002) .................................................................................................13, 17

iii

*Grund v. Delaware Charter Guarantee & Trust Co.*,
    788 F. Supp. 2d 226 (S.D.N.Y. 2011)...........................................................32, 34

*Haberkorn v. Marquis Jet Partners, Inc.*,
    2011 WL 5822281 (S.D.N.Y. Nov. 17, 2011) ............................................14

*Hart v. Rick's NY Cabaret Int'l, Inc.*,
    967 F. Supp. 2d 955 (S.D.N.Y. 2014)........................................................11

*Hughes v. Ester C Co.*,
    930 F. Supp. 2d 439 (E.D.N.Y. 2013) .......................................................32

*In re Blech Sec. Litig.*,
    2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003) ...........................................30

*In re Canon Cameras Litig.*,
    2006 WL 1751245 (S.D.N.Y. June 23, 2006)............................................32

*Jermyn v. Best Buy Stores, L.P.*,
    256 F.R.D. 418(S.D.N.Y. 2009) ................................................................23

*Kaufman v. Sirius XM Radio, Inc.*,
    751 F. Supp. 2d 681 (S.D.N.Y. 2010) *aff'd*, 474 F. App'x 5 (2d Cir. 2012)..................12, 13

*Klos v. Polskie Linie Lotnicze*,
    133 F.3d 164 (2d Cir. 1997).......................................................................31

*Koch v. Greenberg*,
    2014 WL 1284492 (S.D.N.Y. Mar. 31, 2014) ..........................................24

*Llanos v. Shell Oil Co.*,
    866 N.Y.S.2d 309 (2d Dep't 2008 ......................................................25, 26

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007).......................................................................34

*Medinol Ltd. v. Boston Sci. Corp.*,
    346 F. Supp 2d 575 (S.D.N.Y. 2004).........................................................31

*Mitsui & Co. Ltd. v. American Export Lines*,
    636 F.2d 807 (2d Cir. 1981).......................................................................15

*Mon-Shore Mgmt., Inc. v. Family Media, Inc.*,
    584 F. Supp. 186(S.D.N.Y. 1984)..............................................................14

*Pelman v. McDonald's Corp.,*
   396 F.3d 508 (2d Cir. 2005)..................................................................19, 20

*Schlessinger v. Valspar Corp.,*
   723 F.3d 396 (2d Cir. 2013)..................................................................25

*Sichel v. UNUM Provident Corp.,*
   230 F. Supp. 2d 325 (S.D.N.Y. 2002)..................................................18

*Spagnola v. Chubb Corp.,*
   574 F.3d 64 (2d Cir. 2009)..................................................................21, 22

*State of New York v. Feldman,*
   210 F. Supp.2d 294 (S.D.N.Y. 2002)..................................................18

*Tasini v. AOL, Inc.,*
   505 F. App'x 45 (2d Cir. 2012) ..........................................................34

*Taylor v. Am. Bankers Ins. Group, Inc.,*
   700 N.Y.S.2d 458 (1st Dep't 1999) .....................................................23

*Tedesco v. Mishkin,*
   689 F. Supp. 1327 (S.D.N.Y. 1988).....................................................30

*Ward v. TheLadders.com, Inc.,*
   2014 WL 945011 (S.D.N.Y. Mar. 12, 2014) .................................16, 17

*Weinstein v. eBay, Inc.,*
   819 F. Supp. 2d 219 (S.D.N.Y. 2011)..................................................23

*Zuccarini v. Ziff–Davis Media,*
   762 N.Y.S.2d 621..................................................................................32

## STATUTES:

28 U.S.C. § 1332(d)(2)..................................................................*passim*

N.Y. Gen. Bus. Law § 349 (McKinney) ...........................................*passim*

N.Y. Gen. Bus. Law § 350 (McKinney) ...........................................*passim*

v

Plaintiffs Michelle Cline and Kelly Engstrom respectfully submit this Opposition to the Motion to Dismiss of Defendant TouchTunes Music Corporation ("Defendant," "TouchTunes," or the "Company") of the Second Amended Complaint (the "Complaint").

## PRELIMINARY STATEMENT

TouchTunes's music service bears scant resemblance to the stand-alone, coin-operated, record-playing jukeboxes of yore – yet Defendants continue to argue that this is the lens through which its service should be viewed.  As alleged in the Complaint, however, TouchTunes operates a centralized, multi-functional, data-driven, multi-platform, highly-integrated system that has the capacity to maintain users' credit cards and personal data, track users' music selections, selection history, payments, account credits, and a user's physical location, and to discern whether a particular in-venue unit is off-line or on-line, and whether a user's song selections were played, skipped, or flushed from a song queue. Thus, while the frustration over a paid-for, un-played song might be enduring through generations of jukebox users, the similarities between the classic stand-alone jukebox and the TouchTunes digital jukebox service end there.

Despite its ability to track in real time whether its users are getting the "pay-for-play" digital music service advertised, agreed to, and reasonably expected, TouchTunes fails to provide refunds or restore credits to users at times when it knowingly does not or cannot deliver on its service – something it does not disclose to users. For instance, if a TouchTunes jukebox is off-line or otherwise not functioning, TouchTunes will continue to allow users to forfeit their account credits and otherwise purchase songs on that unit – even though the selected songs will never play. Similarly, if a venue owner or operator uses a TouchTunes-provided remote control for the unit and elects to skip certain songs or flush an entire queue of purchased songs, TouchTunes will not issue refunds or restore the credit to the customers' accounts.

TouchTunes argues that it is not responsible for such occurrences and that it disclaims liability for any unplayed music in its Terms of Use agreement. However, users are not appropriately informed of the circumstances under which they may be taken advantage of and unwittingly lose their credits. Indeed, the only examples TouchTunes provides for its disclaimer are matters ostensibly *outside* the Company's control, *i.e.*, the "inherent unreliability of the Internet," or the "inaccessibility or technical failure of my TouchTunes [App]." Certainly, a reasonable consumer would expect a refund or restoration of credit in circumstances that are completely *within* TouchTunes' power and control, *i.e.*, instances where TouchTunes knows paid-for music selections will not or did not play. Unfortunately, that is not the case.

As part of its opportunistic and deceptive practice of depriving users from reasonable use of their TouchTunes credits, TouchTunes also fails to inform users that their credits will expire in an unreasonably brief time period – a practice and time period which are also prohibited by law. TouchTunes argues that it does inform users that their purchased credits will expire in 60 days on the App (submitting a purported "screenshot" as evidence) but this argument fails for several reasons. First, the law requires that consumers be advised of the expiration policy *prior* to purchase (something the Terms of Use agreement fails to do). Second, the law requires that such credits may not expire in less than five years from the date of purchase. And, finally, the screenshot that Defendant asks the Court to take judicial notice of, is evidence of nothing and entirely improper. Indeed, there is no indication that the proffered screenshot is the same screen or information available to users during the class period, and, it is Plaintiffs' understanding that the expiration policy has changed several times over the years. Accordingly, Defendant's request for judicial notice should be denied.

While TouchTunes argues for an unbounded interpretation of  the Terms of Use term "any" with regard to its disclaimer of refunds "under *any* circumstances," it also asks the Court to interpret narrowly (or even ignore) the term with regard to its choice of law mandate. Indeed, despite compelling users to agree to bring "any" claim in New York, pursuant to New York law (as if the claims arose in New York), Defendant now argues that "any" does not include statutory claims or New York common law claims when its services are accessed outside the state.  Stated otherwise, TouchTunes cannot be held accountable for its conduct within or without New York unless a consumer physically uses the service in the state.  This rather convenient (albeit absurd) argument – which would without a doubt be argued to the contrary had this claim been brought outside New York – routinely has been rejected by courts holding defendants to their contractual choice of law provisions. Setting aside the additional inequity and incongruity of arguing that this matter should be dismissed "with prejudice," Defendant should be estopped from arguing that New York law does not apply to this action.

Plaintiffs, on their own behalves and as representatives of a class of similarly situated individuals, seek to recover compensatory damages in the amounts paid for song selections purchased but not played: (a) through the TouchTunes App; or (b) from physical jukeboxes purchased by credit card.  By operating a "pay-for-play" jukebox service that accepts payment without regard to whether songs could be or are played, and which, in fact, has built-in tools designed specifically to prevent songs from being played, and then failing to issue refunds or restore credit where possible and appropriate, TouchTunes is actively deceiving consumers. For these reasons and for the arguments contained herein, Defendant's motion to dismiss should be denied.

## STATEMENT OF FACTS

TouchTunes touts itself to be the largest in-venue interactive music and entertainment platform, representing itself as offering "pay-for-play" digital jukebox services.  To offer these services, the Company contracts with venues in which TouchTunes' digital jukebox hardware is installed and maintained by TouchTunes. ¶ 2.  Consumers in these venues have the option to select songs manually, paying with cash or credit card at the physical jukebox, or through TouchTune's mobile "myTouchTunes" application (the "App"), where consumers set up an account with a credit card and personal information, purchase credits, and can select and use credits to play songs from their own mobile device. ¶ 3. As part of the App, users can check into any venue, and then, using credits purchased through the App, pay for and listen to a selected song. ¶ 4.  According to the TouchTunes website, consumers pay for their song selections on TouchTunes devices at "over 60,000 bars and restaurants across North America." ¶ 11.

### *Non-App Users*

Consumers, wishing to hear a song at a TouchTunes equipped venue, can select and pay for songs at physical jukebox devices. ¶ 34. Digital jukeboxes permit consumers to pay for credits, to be redeemed for song selections, by cash or credit card.  The average song purchase from the jukebox will cost between 1 and 4 credits, with per-credit prices varying by venue and song selection (in the range of $1.00-$3.00). ¶ 35. The jukebox screen shows consumers the queue of selected songs as they make their choice and the number of credits the consumer has purchased in the right hand corner.  ¶ 36.

### *App Users*

Consumers also have the option of purchasing song selections by downloading the TouchTune's App from the iTunes App Store (or the equivalent application service provider).

4

TouchTunes claims that since launching the App, Consumers have downloaded it over 2 million times, enabling App users to "choose and pay for music on the jukebox directly from their smartphones" at TouchTunes enabled venues. ¶ 39. To take advantage of the Company's digital jukebox services through the App, users log in to their account using their personal e-mail, and can proceed to purchase credits to redeem for song selections at their chosen venue. ¶ 40.  While downloading the App is free, selection of songs requires the user to enter credit card billing information, which is maintained by TouchTunes, and select a set number of credits, which thereafter can be redeemed for song selections made through the App.  The average song purchase through the App will cost between 1 and 4 credits, with per-credit prices varying by venue and song selection. ¶ 41.

### Misrepresentations to App Users

In the event a paid-for song, purchased through the App, does not play, the App user can see that the song was not played as TouchTunes will commonly display an error message. ¶ 45. The generation of such a message, visible to the App user, also creates a unique electronic code which is transmitted to TouchTunes.  This electronic string is associated with the failure to play the selected song. ¶ 46. TouchTunes maintains records of these electronically generated errors through the codes they generate and therefore is aware of what songs were actually played. ¶¶ 46-50.  Despite its ability to track in real time song non-plays and song play errors, TouchTunes does not issue a refund or restore the associated credit to the user's account. ¶ 48.

### Venue Remote Control

Unbeknownst to TouchTunes users, the TouchTunes hardware installed in each venue also provides the venue owner or operator the unfettered ability to skip any song a user has selected and paid for, by use of a remote control labeled with TouchTunes' logo.  ¶¶ 51-52.

When the venue owner or operator exercises use of the remote control to skip songs (or even flush an entire queue of paid-for songs), the venue's physical jukebox flashes "Skipped" across the screen, reflecting that the TouchTunes recognizes and generates an electronic code for this action. ¶¶ 53, 56. The Remote Control User's Guide (the "User Guide") provides no standards or guidelines to venue owners or operators regarding the proper use of the song-killing remote. However, the User Guide provides that the functions of the remote include "skip song" and "flush play queue." ¶ 54.

During times when no consumer paid-for songs are playing or in queue, the TouchTunes hardware reverts to an auto-play mode cycling various pre-selected content delivered by TouchTunes.  However, during this auto-play period, the functions of the remote control cannot be used to skip songs which are delivered by TouchTunes.  Strangely, only those songs purchased by TouchTunes consumers can be skipped or flushed from the queue.  ¶ 55. When a venue owner or operator exercises use of the remote, enabled by the TouchTunes hardware and in accordance with the User Guide, the users who paid for songs that were skipped or flushed from a queue, are neither refunded their money nor restored their credits. ¶ 56.  Users are provided no warning that their song selections may be skipped by virtue of TouchTunes' hardware design, and in the event that a song is skipped, despite TouchTunes' immediate knowledge of this fact, no refund or restoration of credit is provided. ¶ 60.

No additional instructions appear on the remote itself, nor are any instructions provided in the User Guide for refunding a skipped song.  No additional instructions appear on the TouchTunes hardware or in the App to be refunded for songs skipped by use of the remote control. ¶ 57.  In fact, because TouchTunes prohibits internal access to the unit by venue owners and dispatches corporate representatives to open and service the physical jukeboxes, collect the

funds deposited, and provide venues their portion of the proceeds, individual venues have no means to issue refunds or restore credit even if they were inclined to do so. ¶¶ 58-59.

Non-App users who pay for their credits at the physical jukebox using credit cards are not refunded when their songs are skipped, despite TouchTunes' possession of the consumer's billing information and ability to do so. ¶ 61. Similarly, App users who pay for their credits using the Company's App are not refunded or restored credits when their songs are skipped, despite TouchTunes' possession of the consumer's account information and ability to do so. ¶ 62. As a result, TouchTunes knowingly has created and distributed hardware that permits the unfettered skipping of purchased songs, while retaining the funds paid by consumers. ¶ 63.

### *Unlawful Expiration of Credits*

TouchTunes' Terms of Use agreement provides "if you apply your credits to a jukebox but do not use those credits to request song plays, your credits will expire after a specified period of time.  If your credits expire they will not be reapplied to your account." <u>No expiration date or period is stated in the Terms of Use agreement</u>. ¶ 64.  Despite this, TouchTunes credits have a set expiration date, even if those credits are not assigned to a particular venue. If they are not redeemed to play a song, they will expire without the user being refunded. ¶ 65.

During the Class Period, the expiration period of credits, both those assigned to a venue and those not assigned, was under a year from the date of purchase. ¶ 66. TouchTunes' Terms of Use agreement suggests that App users' credits "will be treated similarly to cash or credit payments made directly to the machine" after credits are assigned to a venue, but before a song is selected.  However, by merely assigning credits for future use at a venue, users still have not exchanged the value of their TouchTunes credits for anything. ¶ 67.

Until credits are exchanged for selected songs, App users still only posses the TouchTunes credits they purchased, which is an electronic credit, "issued on a prepaid basis," "redeemable upon presentation at a single merchant," namely, TouchTunes. 12 C.F.R. §1005.20(a)(1); *see also* GBL § 396-i(1) (defining a gift certificate in similar terms to encompass electronic credits to be "honored upon presentation"). ¶ 68. The expiration of such credits in less than 5 years is prohibited by the CARD Act, which amended the Electronic Fund Transfer Act to establish a "[p]rohibition on sale of gift certificates or cards with expiration dates." 12 C.F.R. §1005.20(e)(2). ¶ 69.

Further, the failure of TouchTunes to provide notice to App users when their credits will expire prior to purchase is a violation of CARD Act, which requires expiration terms be "clear and conspicuous" in written or electronic format. 12 C.F.R. §1005.20(c). ¶ 70. App users are not refunded when their credits have expired without use, despite TouchTunes' possession of the consumer's account information and ability to do so. ¶ 71.

TouchTunes' failure to maintain a lawful policy of disclosing a clear and conspicuous expiration terms, and maintaining a policy that credits expire in less than five years from the date of purchase is unlawful. ¶ 72. As such, Plaintiffs seek refunds for unlawfully expired credits, and injunctive relief to change the unlawfully vague terms of use and unlawfully short time period prior to expiration, which are inherently misleading and deceptive to consumers. ¶ 73.

### *The Misleading Terms of Use Agreement*

Once App users and Non-App users begin using the TouchTunes service, they become bound by the Terms of Use agreement. ¶ 74. Pursuant to the Terms of Use, TouchTunes disclaims responsibility for any unplayed songs, regardless of whether it was directly responsible for the failure, and provides examples of "factors, including the inherent unreliability of the

8

Internet" or the "inaccessibility or technical failure of my TouchTunes" which may prevent a song from being played. ¶ 75. Notably, these provisions address matters *outside* TouchTune's control and fail to provide notice to any reasonable user that, in instances where TouchTunes does have the knowledge and control (*i.e.,* units being broken, idle or off-line, or when a remote is used to skip or flush a queue of paid-for songs), TouchTunes will still not issue a refund or restore credit to the user. ¶ 76.

Indeed, nowhere in the Terms of Use agreement does the Company provide notice that the venue owner or operator has the capability and discretion to skip a paid-for song selection or flush the entire queue of paid-for song selections with no refund or restoration of credit to the TouchTunes consumer. ¶ 77. Similarly, the Terms of Use agreement fails to inform consumers that TouchTunes is aware, through electronically generated codes transmitted to the Company, when a purchased song does not play for any reason.  ¶ 78. If a TouchTunes jukebox is broken, idle, or off-line, and the App generates an error message that the selected song has not played, still no refund or restoration of credit is issued. *Id.* As such, it is by design and not error that TouchTunes is unjustly enriched by consumer's payments, made in anticipation of "pay-for-play" digital jukebox services, when none are delivered.  ¶ 79. Further, by giving venue owners or operators the ability to skip a paid-for song by use of the TouchTunes hardware, TouchTunes knowingly permits additional circumstances to exist under which "pay-for-play" digital jukebox services will not be delivered to paying consumers, and yet no refund or restoration of credit is issued. ¶ 80.

The Company's practice is additionally deceptive under the circumstances that it possesses the consumer's account and billing information through the App, and has the ability to easily issue a refund or restore credits for unplayed songs. ¶ 81.  Consumers are not provided

notice that TouchTunes, through its hardware and App software, is designed to accept consumers' payments for digital jukebox services even when it is aware that paid-for songs will not or could not be played – something a reasonable consumer would expect.  ¶ 82.

Further, the reasonable consumer has no notice that the Company's hardware within a TouchTunes equipped venue permits the skipping of paid-for songs without refund or restoration of credit. ¶ 83. Moreover, the reasonable consumer is not provided notice – *prior to purchase* – that pre-paid credits will expire as required by law. *See* 12 C.F.R. § 1005.20(c); GBL § 396-i(3). ¶ 84. TouchTunes' representation that it will deliver "pay-for-play" digital jukebox services is, in fact, false in each and every circumstance where payment is accepted and the Company is aware that the consumer's selection is not or could not be played. ¶ 85.  As such, TouchTunes engages in fraudulent or misleading business practices to induce users to purchase "pay-for-play" digital jukebox services, where the Company has designed an App to accept and retain consumer's payments, regardless of whether their song selection is played. ¶ 86.

## PROCEDURAL HISTORY

On January 7, 2015, the Court issued its Order on Defendant's Motion to Dismiss, denying the motion as to jurisdictional and class allegations, and providing Plaintiffs' the opportunity to further plead their allegations, specifically to clarify the applicability of the Terms of Use and GBL claims [Doc. 18]. Plaintiffs did so, filing the Second Amended Complaint on January 28, 2015, clarifying the applicability of the Terms of Use to all consumers and supplementing additional facts constituting the misleading and deceptive acts and practices of the Defendant [Doc. 19].

**ARGUMENT**

I.    **PLAINTIFFS PROPERLY ASSERT CLAIMS UNDER NEW YORK CONSUMER PROTECTION LAWS**

TouchTunes asserts that Plaintiffs' claims are fatally flawed in their application of New York consumer protection law despite all rational evidence to the contrary.[1] Def. Mem. at 9.  At the outset, Plaintiffs had no option but to pursue their claims in a New York forum and under New York law, as mandated by the TouchTunes Terms of Use agreement.  Following the Terms of Use, which TouchTunes drafted and imposed on its users, Plaintiffs have pleaded harm in New York, deceptive acts, and material omissions. Indeed, Plaintiffs have pursued their well pleaded claims under the *only* appropriate law and in the appropriate jurisdiction.

   **A.  TouchTunes' Own Terms Of Use Agreement Requires The Application Of New York Law And States New York Based Deception**

After misleadingly avoiding mention of the TouchTunes' choice of law and forum clause in its first Motion to Dismiss, TouchTunes now argues that the Court must invalidate this portion of its own Terms of Use agreement[2] (Annexed to the Barry Decl., Exhibit B), which expressly mandates New York law be applied in a New York court to "*any*" dispute.  Def. Mem. at 10.

---

[1] While Defendant again preserves its challenge to CAFA jurisdiction, this Court has properly denied consideration of this argument at this stage of the proceeding, for the reasons presented in the prior motion to dismiss briefing.  *See* Doc. 18, Order; *Hart v. Rick's NY Cabaret Int'l, Inc.*, 967 F. Supp. 2d 955 (S.D.N.Y. 2014) (Where the operative complaint alleged that the amount in controversy exceeds $5 million, creating "a presumption that the amount in controversy requirement of CAFA has been met."). In light of this holding, Plaintiffs have alleged no changes to the basis for their properly pleaded jurisdiction. *See* Order at p. 4 ("[a]bsent a change in the jurisdictional allegations, the Court would be unlikely to revisit their sufficiency on any motion to dismiss")

[2] The Terms of Use agreement (appearing on both the App and physical jukebox) provides:
   **You agree that any dispute between you and TouchTunes will be governed by the law of the State of New York, without giving effect to any principles of conflicts of law, as if entered into by residents of New York and fully performed therein, and that any legal action brought by one party against the other will be brought in the courts of the City of New York, New York.**

11

Apparently, Defendant has found a way to insulate itself from virtually all liability such that no individual who accesses the TouchTunes service in any state other than New York can bring an action against the Company for any reason.  TouchTunes' asks the Court to simply ignore its own contractual mandate that New York law governs "*any dispute*," and that performance under the Terms of Use will be deemed to have occurred *in New York*, without giving effect to conflict of law – regardless of where the user accessed the TouchTunes service. Thus, if, as is the case here, a consumer accessed the New York-based TouchTunes service outside New York and complied with the Terms of Use agreement by bringing an action in New York pursuant to New York law (as required), TouchTunes will take the position that New York law does cannot apply. Def. Mem. at 11.  The Court can be certain that, had Plaintiffs pursued their respective claims under the laws of their respective states, TouchTunes would now be moving to dismiss those very claims pursuant to its Terms of Use. TouchTunes continues to seek piecemeal enforcement of its own adhesion contract using it as a sword and shield to avoid liability and then compounding the injustice by demanding dismissal with prejudice. Def. Mem. at 26.  This bizarre position is not only untenably head-spinning but unsupported.

For the second time, TouchTunes argues that no New York based-deception is alleged (Def. Mem. at p. 9-10), without citing a case where a company has been permitted to unilaterally ignore its own, broadly stated, choice of law and venue provisions in a contract that it otherwise asserts is binding.  *See Def. Mem. p. 9-10; Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314 (2002); *Kaufman v. Sirius XM Radio, Inc.*, 751 F. Supp. 2d 681 (S.D.N.Y. 2010) *aff'd*, 474 F. App'x 5 (2d Cir. 2012); *Costigan v. CitiMortgage, Inc.*, 2011 WL 3370397 (S.D.N.Y. Aug. 2, 2011). While TouchTunes is correct that the Court in *Kaufman* relied on the decision in "*Goshen* [which] explicitly rejected the assertion of a GBL § 349 claim by non-New York plaintiffs who

12

had not engaged in any transaction in New York, even though the allegedly improper scheme was 'contrived and implemented' in New York," there remains a critical distinction to the instant matter.  Indeed, neither *Kaufman* nor *Goshen* addressed the situation present here where not only did the conduct emanate from New York but contractual obligations imposed by Defendant mandated the application of New York law for any claim. *Kaufman*, 751 F. Supp. 2d at 688; *see* Def. Mem. at 10.  For this reason, TouchTunes should be estopped from rejecting the application of New York law and a New York choice of forum that it bound Plaintiffs to.

More analogous to the present case is *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382 (S.D.N.Y. 2010).  There, the plaintiffs were consumers from various non-New York states, who used the electronic hotel booking services of Hotels.com and its subdivisions of booking websites for hotels physically located in New York.  In determining that the GBL did not apply to the alleged non-New York deceptions of Travelocity and Expedia (travel booking websites under the Hotels.com umbrella of companies), the court looked to both websites' user agreements and applied the law designated therein.  Accordingly, the court in *Chiste* held that "a reasonable relationship between the law chosen in the User Agreement and the Defendants" was determinative. *Id.* at 408 (*internal citation omitted*).  Travelocity's User Agreement designated Texas, while Expedia's designated Washington for choice of law, and "[u]ltimately, there is a greater relationship between the chosen law and the User Agreements than there is between New York and the User Agreements." *Id.*  Here, Defendant has selected New York in its Terms of Use agreement, and, thus, the application of New York law is appropriate.

In *Mon-Shore Mgmt., Inc. v. Family Media, Inc.*, 584 F. Supp. 186, 193 (S.D.N.Y. 1984), where this Court analyzed another section of the GBL (New York Franchise Sales Act, GBL § 681, *et seq.*), it was determined that contractual choice of law provisions are fully enforceable,

finding that extraterritorial application of the law was not only constitutional, in the abstract, but proper under the parties' explicit agreement. There "defendants argue that New Jersey, Pennsylvania and California, as the sites of the franchises in three of these actions, have a greater interest in applying their law to the cases than does New York"; however, the Court gave no weight to that argument, holding instead:

> the franchise agreements in each of these cases have a choice of law provision … This provision is sufficient, without more, for New York's Franchise Sales Act to be applied in this litigation. Under New York's conflict of laws doctrine, which we are required to apply in this case, *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), New York will honor a provision in an agreement stipulating that the law of a particular jurisdiction will govern the relations between the parties. *Freedman v. Chemical Construction Corp.,* 43 N.Y.2d 260, 265, 401 N.Y.S.2d 176, 179, 372 N.E.2d 12, 15 (1971); *C.B.S. Inc. v. Tucker,* 412 F.Supp. 1222, 1226, n. 5 (S.D.N.Y.1976).

*Id*. As such, any argument that the TouchTunes' User agreement choice of law cannot be applied to GBL claims is erroneous.

Distinguishably, this Court recognized the narrowness of the parties' contractual "governing law" provision of an agreement in *Haberkorn v. Marquis Jet Partners, Inc.*, 2011 WL 5822281 (S.D.N.Y. Nov. 17, 2011). Unlike the TouchTunes Terms of Use agreement – which broadly states that "**any legal action brought by one party against the other will be brought in the courts of the City of New York, New York**" and "**any dispute between you and TouchTunes will be governed by the law of the State of New York**" – the contract relied on in *Haberkorn*, only "one of several agreements that collectively establish the relationship between" the parties, contained vastly different terms:

> THIS AGREEMENT SHALL IN ALL RESPECTS, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS ENTERED

14

> INTO IN THE STATE OF NEW YORK BY RESIDENTS OF SUCH STATE
> AND TO BE PERFORMED ENTIRELY WITHIN SUCH STATE.

*Id.* at *1.  As this Court correctly found, the language of that one agreement is limited, and by its explicit terms "simply evidences the parties' agreement that the law governing the "agreement" shall be that of New York." *Id.*  In contrast, TouchTunes' contract of adhesion, which it had full and ultimate control over, is not so limited as it applies to "any dispute" – including statutory claims.  For this reason, TouchTunes should be estopped from disclaiming its own terms.  *See Mitsui & Co. Ltd. v. American Export Lines,* 636 F.2d 807 (2d Cir. 1981) (contract of adhesion are to be construed against the drafter); *Cabot Corp. v. S.S. Mormacsan,* 441 F.2d 476 (2d Cir.1971).

Further, Defendant's heavy reliance on *4 K & D Corp. v. Concierge Auctions, LLC*, 2014 WL 904451, at *15 (S.D.N.Y. Mar. 10, 2014) is also misplaced. *4 K & D Corp.* arose from a home sale, distinguishable from a contract of adhesion, in which plaintiffs failed to even "allege[] facts to show that [defendant's] conduct was 'consumer-oriented,' which is a required element of the GBL claim."  More factually applicable to the instant matter, *4 K & D*, relies on the reasoning provided by *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013), which found "that the complaint allege[d] a sufficient nexus between [plaintiff's] transactions with [defendant] and New York to fall within the territorial reach of these two provisions of the New York General Business Law."  In rendering this decision, the Second Circuit looked to the defendant's location and contractual choice of law:

> [defendant] is paid in New York and refuses to disburse funds from customer accounts until it receives a "Funds Redemption Form" at its New York office. [Defendant] requires that all customer communications, including the Agreement and objections to trades, be sent to its New York office. The Agreement specifies that New York law governs all disputes between [plaintiff] and [defendant]; indeed, it provides that all suits relating to the Agreement are to be adjudicated in

15

state or federal courts located in New York. Based on these various alleged ties between the customer transactions and New York, we are persuaded that, at this stage, "some part of the underlying transaction ... occur[red] in New York State,"

*Id.* at 123-24. The facts are ultimately the same as the instant case, Defendant is headquartered in New York, where its operations are centralized and based, where it runs its servers that operate the digital jukeboxes that are accessed throughout the county, and where it controls and processes all electronic payments and maintains all user data. In this regard, the TouchTunes jukeboxes are akin to a national bank's ATM machines – while the services are accessed nationally and internationally, the physical units are merely portholes to the location of the primary business operation.[3]  Ostensibly, this is the very reason TouchTunes' provided for a mandatory choice of law and venue provision as it too deems its operations to be overwhelmingly New York-based and its intention to transact its business in New York under New York law.  Even TouchTunes must concede the inconsistency and ridiculousness of its own position. Def. Mem. at p. 12, n. 6.  ("TouchTunes concedes that it does do business in New York and consented to personal jurisdiction in New York.").  This admission supports the same outcome as in *Cruz*.

This Court applied the *Cruz* standard again within the past year, holding that out-of-state plaintiffs have actionable claims under the GBL. *See Ward v. TheLadders.com, Inc.,* 2014 WL 945011 (S.D.N.Y. Mar. 12, 2014), *reconsideration denied* (Apr. 21, 2014). In so holding, the Court in *Ward* considered that:

The defendant operated a website in New York and maintained its bank account in New York. Many of the relevant communications and transactions with the

_____

[3] In this analogous scenario, banks have been subject to § 349 liability for claims involving ATM machines accessed outside of New York. *See Relativity Travel, Ltd. v. JP Morgan Chase Bank*, 13 Misc.3d 1221(A), slip op. (N.Y. Sup. Ct. 2006).

> defendant, including the registration, cancellation, review of website materials, and various monetary transactions, apparently occurred on or through the website itself, which is equivalent to communicating or transacting directly with a New York address. Thus, the plaintiffs allege more than "'hatching a scheme' or originating a marketing campaign in New York" without any deceptive transactions happening in New York. Therefore, at this stage of the litigation, the out-of-state plaintiffs have pleaded sufficient facts that, at the very least, give rise to a plausible inference that the allegedly deceptive transaction occurred in New York and that the defendant's conduct fell within the ambit of the "legislative intent to address commercial misconduct occurring within New York." Hence, these out-of-state plaintiffs have standing to assert a claim under GBL § 349.

(internal citations omitted) citing (*Goshen*, 746 N.Y.S.2d 858).

Ultimately, in addition to actual New York conduct alleged, the breadth of TouchTunes agreement, covering "any" dispute, and Plaintiffs' satisfaction of relevant precedent must estop TouchTunes from the assertion that the GBL cannot apply to Plaintiffs' claims and that there was no deception in New York.  Plaintiffs have plainly satisfied any threshold inquiry as to the application of the GBL to their claims.

**B.  Deception Is Sufficiently Pleaded**

TouchTunes persists in its unfounded argument that Plaintiffs failed to meet their pleading burden to allege deception, when offering jukebox services, which TouchTunes itself describes as "pay-per-play."  Def. Mem. at 14-15.  To date, the TouchTunes website *continues* to describe the jukebox service it provides as "pay-for-play." Despite Defendant's protestation of the term, the "About TouchTunes" information on the physical juke box describes TouchTunes' service as a "pay-for-play" jukebox.[4]  TouchTunes' argument that "pay-for-play" is not the most basic understanding of the function a "jukebox" is ludicrous. Def. Mem. at 15.  As such, TouchTunes' misleadingly and deceptively failed to provide notice to Plaintiffs and members of

---

[4] *See* TouchTunes, http://www.touchtunes.com/about/overview/ (last visited April 2, 2015) ("pay-for-play digital jukebox").

the proposed class that: (a) despite its real-time ability to, *inter alia,* monitor payments and corresponding song plays and whether jukeboxes are on-line and functioning, it will retain user funds and neglect to restore credits for paid-for-but-unplayed songs; (b) venue owners and operators are equipped to skip their songs without notice or providing appropriate credit; (c) it misleadingly and deceptively advertises "pay-for-play" digital jukebox services despite the fact that it does not truly provide that service; and (d) its policy fails to provide the appropriate length of time and notice of credit expiration in the Terms of Use.

A deceptive act or practice is "a representation or omission likely to mislead a reasonable consumer acting reasonably under the circumstances." *Sichel v. UNUM Provident Corp.,* 230 F. Supp. 2d 325, 331 (S.D.N.Y. 2002) (*internal citation omitted*).   Whether deceptive acts are properly asserted is to be construed "fairly liberally" according to Defendant's own case law. *Id.* at 330 (citing *State of New York v. Feldman*, 210 F. Supp.2d 294, 301–02 (S.D.N.Y. 2002)). Plainly, Plaintiffs – as any reasonable consumer would – understood and expected a "jukebox," by its nature, to play the song a customer has purchased.  TouchTunes offers a multi-functional, data-tracking, multi-platform system that can and does have the capacity to issue refunds and restore credits for unplayed music selections due to circumstances such as the unit being off-line or not functional, songs being skipped, song being flushed from the queue as a result of a TouchTunes-provided remote control, or for expired credits after an unreasonably and unlawfully short period of time.   As such, consumers could reasonably expect Defendant to refund purchases or restore credits that it knows have not been honored. Tellingly, TouchTunes does not deny having this capability.

Plaintiffs here plead violations of both section §§ 349 and 350 of the GBL, and plainly assert that that services of a "jukebox" and "pay-for-play" services are as synonymous to

TouchTunes as they are to the average consumer.  ¶¶ 87-98.  Defendant's analogy to *Pelman v. McDonald's Corp.,* 396 F.3d 508 (2d Cir. 2005), in which the Plaintiffs were minor children allegedly targeted by McDonald's marketing, injured by the "purportedly deceptive act based on an omission" of accurate nutritional information, is misplaced.  Def. Mem. at 15-16.  The *Pelman* court held "it is not sufficient for the plaintiffs to point to the omission [of nutritional information] alone. They must also show why the omission was deceptive—a duty they have shunned" by failing to plead a causal connection between access to nutritional information and representations by McDonald's.  *Id.* at 529.  The instant pleading has no such infirmity.  The omission of TouchTunes that its product is *designed* to take money and not provide the paid-for service at all meets the pleading obligation of explicitly identifying the deception.  The instant case would be analogous to *Pelman* only if McDonald's took a customer's money and order, knowing they were out of food, and then failed to deliver food ordered or provide a refund. Whereas the *Pelman* plaintiffs failed to assert that a "consumer could not reasonably obtain" the information they claimed was deceptively withheld, the same is not the case here. ¶¶  77-79.

In fact, Plaintiffs plead that the very terms of TouchTunes' Terms of Use agreement misrepresent the basic operation of the Company's hardware and software by advising only that TouchTunes disclaims responsibility for any unplayed songs but then deceptively identifies as examples only circumstances outside its control, "including the inherent unreliability of the Internet" or the "inaccessibility or technical failure of my TouchTunes" which may prevent a song from being played. ¶ 75. This provision of the Terms of Use agreement fails to provide any reasonable user notice that TouchTunes' hardware and/or software was designed to take their money even when a jukebox is off-line, not functioning, or when a venue owner/operator is permitted to skip paid-for music selections or flush an entire queue of paid-for music selections.

19

Similarly, the Terms of Use provides no substantive information about the expiration of credits, as reasonably informed by the CARD Act, and deceptively fails to refund consumers, despite being fully able to, upon expiration. ¶¶ 68-70. As such, *Pelman* is inapplicable to the far more blatant deception engaged in by TouchTunes, which is properly and explicitly pleaded.

### C.  TouchTunes Terms of Use Are Materially Misleading

TouchTunes attempts to focus the court on the innocuous question of whether a "reasonable user is [] unaware that a purchased song might not always play" – but this sanitized question is not the gravamen of Plaintiffs' action or the thrust of TouchTunes deceptive and misleading practice. Def. Mem. at 17.  Rather, the question is whether TouchTunes, *by design*, takes advantage of consumers knowing it has not and will not provide the bargained-for service, where it has control over the circumstances and the knowledge and ability to refund the consumer or restore credits. Plaintiffs have pleaded plausible facts as to the design of the App, how the electronic payment and song selection records are known to Defendant, and the mechanisms in place to preclude paid-for songs from being played. As such, TouchTunes' ability to issue refunds or restore credits for songs, which by TouchTunes' design will not be played, constitutes the basis for Plaintiffs' action.

TouchTunes' asserts that disclaiming all refunds (arguing ironically that ***this*** provision of its  Terms of Use agreement *is* enforceable) constituted a full disclosure and therefore cannot be the premise of any deception claim.  Def. Mem. at 17-18; *Spagnola v. Chubb Corp.*, 574 F.3d 64 (2d Cir. 2009).  Yet, Plaintiffs' pleading explicitly belies this point by identifying portions of the Terms of Use agreement which are in and of themselves deceptive. ¶¶ 74-86.  Plaintiffs explicitly reject the idea that TouchTunes disclosures are adequate, specifying portions of the agreement which act to provide users reassurance that songs may not play due to "factors,

20

including the inherent unreliability of the Internet" or the "inaccessibility or technical failure of my TouchTunes" – Not the known design of TouchTunes' product.  ¶¶ 75-76.

In interpreting *Fink v. Time Warner Cable,* 714 F.3d 739, 742 (2d Cir.2013), a case relied upon by Defendant, this Court has already held that "[a]lthough 'the presence of a disclaimer or other clarifying language *may* defeat a claim of deception,' the Court cannot hold as a matter of law that the product labels are not misleading to a reasonable consumer." *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 2014 WL 1285137 (S.D.N.Y. Mar. 27, 2014) (finding the determination inappropriate for motion to dismiss). As such, this inquiry is premature.

Moreover, the type of disclosure analogized in *Fink* is not applicable here in absolving TouchTunes from liability.  In fact, the very passage cited to in the *Fink* opinion also provides that "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."  714 F.3d at 742.  The context here is a simple one; the highly-integrated TouchTunes jukebox technology are understood to play paid-for songs (at least to the extent the Company has control over it).   At no point does TouchTunes provide notice to any consumer that this is not the case, by the specific design of the Defendant's product.  ¶¶ 74-86. Further, *Fink*, as relied upon by Defendant for its position that is has disclaimed this liability, cites *Broder v. MBNA Corp.*, 722 N.Y.S.2d 524, 526 (1st Dep't 2001), in which a New York court on summary judgment still found an issue of fact as to whether contractual disclaimers evidenced "a lack of candor that would lead a reasonable" consumer to be deceived.   As such, Plaintiffs sufficiently incorporate the agreement by reference into the Complaint and raised factual issues as to its candor and applicability -- sufficient to meet their pleading burden and raise issues of fact.

Defendant further relies on *Spagnola* for the proposition that Plaintiffs' § 349 claims are not based on materially misleading representations or omissions.  Def. Mem. at 12.  However, in *Spagnola*, the plaintiff did "not claim that he did not receive adequate insurance coverage or that he did not contract for the coverage he received" -- but rather, only that his premiums rose at a rate that was not allegedly foreseeable to him. *Spagnola*, 574 F.3d at 74.  Distinguishably, Plaintiffs in the instant case are alleging they were deprived of the services contracted for.

Similarly, Defendant's reliance on *Chiste*, for the proposition that Plaintiffs' claims assume unreasonable stupidity on the part of consumers is misplaced.  Def. Mem. at 13.  There, plaintiffs argued that it was deceptive that Hotels.com's failure to disclose that it was making a profit on each reservation through its online hotel reservation portal, where "[a]ny reasonable consumer would understand that businesses are in business to make a profit." *Chiste*, 756 F. Supp. 2d at 405.  Plaintiffs do not allege here that they were deceived by TouchTunes legitimate retention of funds paid for songs that were played, even in instances where they paid a premium.  Rather, it is Plaintiffs' contention that no reasonable consumer would anticipate that TouchTunes was aware of many circumstances (not disclosed in the Terms of Use agreement) where the Company would retain user funds or not restore credits despite the fact that it had complete control over whether such refunds or credits could be issued, and knowledge that a song could not be or was not played.

And, whereas in *Weinstein v. eBay, Inc.,* 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011), "common sense dictate[d] that no reasonable consumer could plausibly think that StubHub tickets come directly from the Yankees when faced with overwhelming evidence to the contrary," users of TouchTunes had every logical reason to believe that TouchTunes did not put in place systems that could deprive them of their ability to hear their song selections.. ¶¶ 74-86.

### D.  Plaintiffs Have Similarly Pleaded Sufficient Facts For False Advertising

Defendant contests that Plaintiffs' allegations contain no advertisement or offer which would constitute a GBL violation.  Def. Mem. at 7.  However, Plaintiffs have properly alleged the misrepresentations of pay-for-play jukebox services and the general TouchTunes business practice of failing to refund payments or restore credits when a paid-for song is not played by virtue of something TouchTunes has put in place or has control over. ¶¶ 74-86. Further, the very nature of the TouchTunes service is marketing itself through the App and the physical units accessed by users throughout the country.  Its advertising, therefore, is coextensive with its service – which is centralized and controlled from New York. ¶¶ 11, 110-115. Ultimately, classes have been certified in analogous cases, where the "parties' arguments for and against class certification for the plaintiff's section 350 claim (false advertising) are identical to the arguments relating to section 349." *Jermyn v. Best Buy Stores, L.P.,* 256 F.R.D. 418, 436 (S.D.N.Y. 2009).  In *Best Buy*, the Court found "class certification for the section 350 claim [was] appropriate" relying on "*Taylor v. Am. Bankers Ins. Group, Inc.,* 700 N.Y.S.2d 458 (1st Dep't 1999) (holding that class certification is appropriate for a section 350 claim when the alleged injury concerns the defendant's general practice)."  The predominant issue before the *Best Buy* Court was "whether Best Buy's advertisements about its price match guarantee were false and misleading because the company had a secret Anti–Price Matching Policy." *Id.*  Like TouchTunes' "general practice" of failing to refund or restore credit for un-played songs, and its failure to provide adequate notice to consumers of song credit expiration, the overarching practice need not be supported by individual reliance, and in itself properly states a materially misleading act or omission by TouchTunes. Thus, Plaintiffs have pleaded sufficient facts to plausibly state their GBL claims.

23

### E. Plaintiffs Properly Plead The Credit-Expiration Allegations As Yet Another Factual Basis For Their GBL Claims

TouchTunes argues that the factual allegations regarding the expiration of TouchTunes credits do not constitute an actionable GBL violation. Def. Mem. at 18-22. In particular, TouchTunes argues that the GBL cannot support a claim for unlawful deception under another statute, that the credit-expiration policy is adequate, and that Plaintiffs may not properly allege this claim on behalf of the class. Each of these arguments is without merit.

### 1. Plaintiffs Plead Credit-Expiration Facts As An Additional Basis For Their GBL Claims

TouchTunes argues that Plaintiffs' alleged facts concerning the unlawful and deceptive credit-expiration policy, do not constitute a "free-standing claim" because the only deception alleged is a violation of 396-i.  Def. Mem. at 22.  Plainly, "GBL §§ 349 and 350 allow private plaintiffs to bring actions to enjoin the unlawful practices proscribed by the statute." *Koch v. Greenberg*, 2014 WL 1284492 (S.D.N.Y. Mar. 31, 2014).  Here, TouchTunes' credit-expiration policy  is but an extension of a broader deceptive practice of depriving users of their paid-for credits.  Contrary to Defendant's arguments, this is not a separate claim but rather an additional factual predicate to Plaintiffs' existing §§ 349 and 350 claims. Indeed, Plaintiffs do not plead a separate violation of the CARD Act, in challenging the unlawful, deceptive, and misleading credit-expiration policy, but include these facts as a supplemental basis for their existing claims. *See* ¶¶ 110-119.

The unreasonably (and unlawfully) short period of time, coupled with the failure to inform users of the credit expiration policy (pre-purchase) in the Terms of Use agreement, underscores TouchTunes' practice of deceptively profiting from consumers. Further, TouchTunes' failure to satisfy the Terms of Use standard under the CARD Act has been found to

24

be a deceptive practice and actionable.  *See Llanos v. Shell Oil Co.*, 866 N.Y.S.2d 309, 310 (2d Dep't 2008). Plaintiffs submit that these practices, together with TouchTunes' misrepresentation and omissions concerning pay-for-play services, constitute a violation of the GBL. *See* ¶¶ 64-73, 110-119.

Defendant concedes that courts have looked to deceptive practices, as informed by 396-i in similarly styled complaints. Def. Mem. at 21-22.  Recently, the Second Circuit in *Schlessinger v. Valspar Corp.*, 723 F.3d 396, 399 (2d Cir. 2013), acknowledged the principle:

> To illustrate the point, the Court of Appeals juxtaposed the facts of this case … with the facts of *Llanos v. Shell Oil Co.,* 55 A.D.3d 796, 866 N.Y.S.2d 309 (2008), *Lonner v. Simon Prop. Grp.,* 57 A.D.3d 100, 866 N.Y.S.2d 239 (2008) and *Goldman v. Simon Prop. Grp.,* 58 A.D.3d 208, 869 N.Y.S.2d 125 (2008), in which plaintiffs alleged that certain restrictions on their gift cards were printed in small type and concealed on the back of the card sleeve. Although this practice was prohibited by New York GBL § 396–i which, like § 395–a, grants the Attorney General the exclusive power of enforcement, it could fall under the broader umbrella of deceptive practices. *See, e.g., Llanos,* 866 N.Y.S.2d at 310–11.

Closely analogous to *Llanos*, here, "[t]he section requires, inter alia, that the terms and conditions of the same 'shall be clearly and conspicuously stated thereon,' including 'whether any fees are assessed against the balance of the gift certificate.'" More generally, "a General Business Law § 349 cause of action may be maintained as to 'all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this state'" *Llanos*, 866 N.Y.S.2d at 311 (*internal citations omitted*).  As such, Plaintiffs have alleged sufficient facts to support their GBL claim and only further add to the breadth of misrepresentations applicable to all users during the class period by virtue of TouchTunes' failure to adequately provide notice of the credit-expiration date, and the unlawfully brief duration, in the Terms of Use.

2.   **TouchTunes Failure To Meet The Disclosure Requirements Under The CARD Act Coupled With Its Ongoing Deceptive Practices State A Cause of Action**

TouchTunes further argues that the CARD Act (12 C.F.R. 1005.20(c)) does not apply to TouchTunes credits, because TouchTunes does not consider those redeemable credits to be in a "dollar amount." Def. Mem. at 21, n. 9.  This argument is meritless and TouchTunes cites no authority for this proposition. Def. Mem. at 21.  Whether TouchTunes considers the purchased amount to be redeemed for services under the name of a "TouchTunes Dollar," "credit," or "voucher," what Defendant calls the purchase to be traded the service of playing a song, does not change nor control whether it is an "electronic payment device that: (i) is usable at a single merchant or an affiliated group; and (ii) is issued in a specific amount; and (iii) may not increase in value or be reloaded; and (iv) is purchased and/or loaded on a prepaid basis for the future purchase or delivery of any goods or services; and (v) is honored upon presentations."[5] *Id.*

Further, TouchTune's attempt to dismiss this actionable claim, by disputing the substance of well-pleaded facts prior to discovery, is premature and improper. Def. Mem. at 19-20. Plaintiffs correctly allege that TouchTunes does not state the number of days in its expiration policy in its Terms of Use, accessible prior to purchase. ¶¶ 69-70. Plaintiffs also allege that the term of expiration is a matter of days, and not, as per the terms of the CARD Act, a period of 5 years.  ¶¶ 69-70 ("The expiration credits in less than 5 years is prohibited by the CARD Act,

---

[5]      Further, the language used by the retailer does not control whether the transaction at issue is governed by the statute.  Plaintiffs have sufficiently pleaded that TouchTunes credits, regardless of title, are the intended subject of this regulation.  *See* ¶ 68 ("Until credits are exchanged for selected songs, App users still only posses the TouchTunes credits they purchased, which is an electronic credit, 'issued on a prepaid basis,' 'redeemable upon presentation at a single merchant,' namely, TouchTunes. 12 C.F.R. §1005.20(a)(1); *see also* GBL § 396-i(1) (defining a gift certificate in similar terms to encompass electronic credits to be 'honored upon presentation') ")

which amended the Electronic Fund Transfer Act to establish a '[p]rohibition on sale of gift certificates or cards with expiration dates.' 12 C.F.R. §1005.20(e)(2).")

Defendant's proposal that judicial notice be taken of an isolated screenshot must be rejected. Def. Mem. at 20. The image proffered is far from irrefutable evidence of anything. Indeed, there is no indication of when the image was taken, whether it is representative of a screen or information available during the class period, or whether it is even authentic. Moreover, Plaintiffs contest the validity of the evidence as it is believed that TouchTunes' credit expiration policy and information available about its policy have changed over time (but has remained unlawful at all times).

Additionally, Defendant truncates its own case law citation, omitting the critical language that "[b]ecause this standard [for judicial notice] has been misinterpreted on occasion, we reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  Further, the purported screenshot produced for the first time on a motion to dismiss is not a public record or irrefutable document properly considered pursuant to the *Finn v. Barney*, 471 F. App'x 30, 32 (2d Cir. 2012) ("The district court may take judicial notice of documents where the documents 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.' Fed.R.Evid. 201(b)(2). 'Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b).') As Plaintiffs clearly did not rely on the image annexed by Defendant, having seen it for the very first time in Defendant's motion papers, and

material information is unknown about the image, its improper introduction at the pleading stage should be disregarded.

In the event that TouchTunes introduction of improper factual disputes at the pleading stage is considered, it merely raises more questions, properly reserved until after discovery.[6] Most significantly, TouchTunes cannot, and does not, dispute that the Terms of Use, available prior to purchase, fails to state the date of expiration, and that the date of expiration is less than the 5 years prescribed by the CARD Act. ¶ 68-70.[7] Moreover, the image depicted appears to be for the application of TouchTunes dollars to a specific location, so whether such notice was provided "at the time of purchase" – and not, at the time of use – remains outstanding. Such glaring oversights on TouchTunes' part further evidence the need for discovery on these claims, prior to a determination on their merits.

Ultimately, TouchTunes fails to dispute the fact that its Terms of Use agreement provides no reasonable notice; the deception and misrepresentation prohibited by the CARD Act is not only flouted, but capitalized upon in the same way TouchTunes profits from its other design features, without refunding or restoring credits to consumers.

---

[6]     While TouchTunes alleges that "Antonio's Nut House" provides an expiration of "60 days," Plaintiffs are without the benefit of discovery, and TouchTunes is understandably silent as to whether this is the number of days expiration policy for all redemptions, and for redemptions over the course of the entire class period. In fact, TouchTunes is conspicuously silent on these important facts, which are omitted from the Terms of Use agreement.  Further, as discussed herein, it is Plaintiffs' understanding that the expiration days have not been uniform over the course of the class period, further causing deception and confusion among users, and requiring discovery.

[7]     Plaintiffs even contemplate TouchTunes' purely linguistic argument in their pleading, directly acknowledging the fallacy in TouchTunes' Terms of Use, that Defendant believes merely assigning credits to a venue, without having selected a song – or effectively exchanged the credits for any service – meets the benefit of Defendant's contractual bargain to the consumer.  *See* ¶ 67.  This argument is illogical and could not be reasonably understood by any consumer to abdicate Defendant of liability to perform delivery of jukebox services.

### 3.   Plaintiffs' Typicality Is An Inquiry Reserved For Certification

Finally, TouchTunes asserts that Plaintiffs cannot state the facts of the credit-expiration policy as part of the GBL claims they pursue on behalf of the proposed class.  Plainly, as Plaintiffs were subject to the same Terms of Use agreement as all other proposed Plaintiffs, their GBL claims for the failure of TouchTunes to refund or restore credit to consumers – where Defendant's product was designed to accept payment without regard to whether a song was or could be played, includes a myriad of factual basis; including, but not limited to, the credit expiration policy.

Significantly, Defendant conflates issues of standing with typicality, in its attempt to isolate the credit-expiration facts, apart from the greater scheme Plaintiffs allege violates the GBL – practices that affect all users subject to the Terms of Use agreement. Def. Mem. at 18.  In TouchTunes' attempt to isolate the credit-expiration facts, Defendant claims that the unlawful credit expiration facts did not deceive Plaintiffs. Def. Mem. at 18. However, all users are subject to the deceptive Terms of Use policy, including Plaintiffs, who were denied the required notice and an expiration date of 5 years from purchase.  Plaintiffs have alleged their damage under TouchTunes' policy of misleading and deceiving consumers by retaining funds (*i.e*., from used and expired credits) in instances where the Company can and should issue refunds or restore credits.  Again, the unlawful credit-expiration policy is just another factual circumstance by which TouchTunes achieves this end.

As in *In re Blech Sec. Litig.,* 2003 WL 1610775, at *17 (S.D.N.Y. Mar. 26, 2003), where seven named representatives could represent purchasers of all securities because "[t]here need not be a class representative for every Blech security, as long as all the securities are part of a common fraudulent or manipulative scheme," and *Tedesco v. Mishkin,* 689 F. Supp. 1327, 1335-

1336 (S.D.N.Y. 1988) which held, "to satisfy the typicality requirement, it is not necessary for the named plaintiffs to have invested in all of the investment vehicles [where] complaint alleges a single pattern of fraud" – Plaintiffs here need not have experienced every single aspect of every fact alleged, to represent the class against Defendant's overarching pattern of deceptive and misleading conduct, in retaining funds for services TouchTunes knows it did not perform, constituting a violation of the GBL.

## II.   PLAINTIFFS' COMMON LAW CLAIMS ARE WELL PLEADED

### A.  Plaintiffs Allege That The Terms Of Use Agreement Is A Contract Sufficient To Support A Breach Of Good Faith And Fair Dealing Claim

Defendant argues that the covenant of good faith and fair dealing can be explicitly disclaimed by the language of the Terms of Use. Def. Mem. at 23. As fully articulated in the Complaint, The Terms of Use fails to disclose the deceptive and misleading practices Defendant engages in – namely, that the *design* of TouchTunes' App and devices permits the skipping or otherwise not playing paid-for songs, while retaining consumers' funds and not refunding payments or restoring credits, and that Terms of Use fails to state the credit expiration policy.  ¶¶ 116-119.

First, this Court has previously sustained claims at the pleadings stage with regards to failure to state required disclosures for the purpose of gift card Terms of Use agreements, constituting a breach of good faith and fair dealing. *Goldman v. Simon Prop. Grp., Inc.*, 869 N.Y.S.2d 125, 129 (2d Dep't 2008) (sustaining "breach of the implied warranty of good faith and fair dealing, arising from the alleged improper disclosure of dormancy fees"). Similarly, such required disclosures are absent from the TouchTunes Terms of Use agreement, stating claims that exist outside the four corners of the Terms of Use that injure consumers.

Second, the Terms of Use agreement fails to disclaim or even touch upon a scheme *known* to Defendant.  This Court has recognized that terms of use agreements, like the one here, constitute contracts of adhesion.  *See Medinol Ltd. v. Boston Sci. Corp.*, 346 F. Supp. 2d 575 (S.D.N.Y. 2004) ("Typical contracts of adhesion are standard-form contracts offered by large, economically powerful corporations to unrepresented, uneducated, and needy individuals on a take-it-or-leave-it basis, with no opportunity to charge the contract's terms.") (citing *Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997)).  In looking at an adhesion contract, the terms must be construed against the drafter and as the Second Circuit held in *Fink,* 714 F.3d at 742, a case relied upon by Defendant, "[a]lthough 'the presence of a disclaimer or other clarifying language *may* defeat a claim of deception,' the Court cannot hold as a matter of law that the product labels are not misleading to a reasonable consumer." *Goldemberg*, 2014 WL 1285137, at *480 (citing *Fink*) (finding the determination inappropriate for motion to dismiss). As such, this inquiry into whether the generic disclaimer language contained in the Terms of Use may abdicate TouchTunes of its independent duty of good faith and fair dealing, effectively disclaiming its own misrepresentation, is premature.

**B.  Plaintiffs' Unjust Enrichment Claim Is Well Pleaded In The Alternative**

Simply, "plaintiff may properly plead unjust enrichment … as [an] alternative claim[] to the breach of contract claim" *Goldman,* 869 N.Y.S.2d at 135 (*citing Zuccarini v. Ziff–Davis Media*, 762 N.Y.S.2d 621).  Defendant's analogy to cases outside a consumer context for the proposition that Plaintiffs' unjust enrichment claims are factually insufficient is unfounded. While the parties must clearly have interacted is some way (*i.e.*, the provision of TouchTunes services to consumers), to "state a claim for unjust enrichment in New York, a plaintiff must allege that: (1) the defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3)

the circumstances were such that equity and good conscience require defendant to make restitution. … Unjust enrichment does not require a direct relationship between the parties." *Grund v. Delaware Charter Guarantee & Trust Co.*, 788 F. Supp. 2d 226, 251 (S.D.N.Y. 2011) *on reconsideration*, 2011 WL 3837146 (S.D.N.Y. Aug. 30, 2011) (citing *In re Canon Cameras Litig.*, 2006 WL 1751245, at *2 (S.D.N.Y. June 23, 2006); *Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147 (1st Dep't 2004); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 471 (E.D.N.Y. 2013) ("Under New York law, unjust enrichment does not require a direct relationship between the parties.")). Here, Plaintiffs have pleaded claims which (1) are not disclaimed by TouchTunes, and (2) state a discrepancy between the reasonably expected value of jukebox services – *i.e. playing the requested song for payment* – and what was received, and should maintain this claim in the alternative at the pleadings stage.

### 1.   TouchTunes Does Not, And Can Not, Disclaim Its Deceptive Scheme

TouchTunes couches its argument that liability may not attach to its deceptive and misleading scheme to knowingly retain consumers' funds when not playing the paid-for song, because the Terms of Use disclaims "refunds" and weakly advises that factors may be outside TouchTunes' control, preventing the playing of selected songs.  Def. Mem. at 25.  Neither contractual reference implicitly nor explicitly excuses the known retention of consumers' payments, the failure to refund or restore credits,[8] which were fully in TouchTunes' control,

---

[8]     TouchTunes' Terms of Use agreement speaks only of refunds and not *restoration* of credits where TouchTunes has the ability provide the same – a fact justifying the maintenance of the independent claim for unjust enrichment at this stage.  Further, TouchTunes' cannot maintain the inconsistent position that credits are "not issued in a denominated dollar amount and do not specify monetary value" (Def. Mem. at 21, n. 9) when disputing the application of the CARD Act, and then draw no distinction between refunding the cash value of those credits and merely providing for their reinstatement, where the Terms of Use do not provide for the later, supporting an unjust enrichment claim (Def. Mem. at 25). Seemingly,

when Defendant knew songs were not or could not be delivered by design of the TouchTunes product. No reasonable consumer could have understood Defendant to disclaim the scheme in which TouchTunes accepts funds knowing services were not provided, *by design*. Accordingly, where, "[t]he essence of unjust enrichment is that one party has received money or a benefit at the expense of another" the claim is properly pleaded. *Goldman*, 869 N.Y.S.2d at 134 (citing *City of Syracuse v. R.A.C. Holding,* 685 N.Y.S.2d 381) (maintaining both unjust enrichment and GBL claims based in consumer protection).

### 2.   Consumers Did Not Receive What They Bargained For

Defendant further argues that an unjust enrichment claim can not stand where Plaintiffs received what they bargained for. Def. Mem. at 24. Plaintiffs have pleaded the deception implicit in paying for "jukebox" services – which are both described by TouchTunes and implicitly understood to be "pay-for-play" services – when no song was played by virtue of the TouchTunes design and no refund or restoration of credit was given. As such, Defendant's assertion that Plaintiffs did not receive less than they bargained for, when Plaintiffs allege they paid to play a song and it was not played or was skipped and no refund or restoration of credit was received, is without merit. Def. Mem. at 24-26.

The present case is vastly distinguishable from *Tasini v. AOL, Inc.*, 505 F. App'x 45, 47 (2d Cir. 2012), in which contributing writers to the Huffington Post claimed that "their work was purely for public service" and had they known that the Huffington Post news source may be sold or benefit a for profit company, they would not have contributed. There, the Second Circuit

---

under TouchTunes own understanding of its credit policy, restoration would be a distinct remedy, apart from providing a refunded, further undermining the argument that all complained-of acts have been fully disclaimed in the Terms of Use, which only addresses that Touch Tunes will not issue refunds for unplayed songs. *See* ¶¶ 74-86.

found that there was no unjust enrichment where contributors were never told that "The Huffington Post would not subsequently be sold to another company." *Id*.  Distinguishably, there is no mistake that Plaintiffs reasonably anticipated their song to play upon purchasing jukebox services.  As such, this is a simple case of unjust enrichment in the event where portions or all of the parties' contract do not govern the misrepresentations at issue.[9]

## III.    ANY PURPORTED INSUFFICIENCY SHOULD BE PERMITTED AN OPPORTUNITY TO CURE

Defendant once again vastly overstates the standard to dismiss claims with prejudice.  Def. Mem. at 26-27. Defendant omits that while "leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend…*for good reason*, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200-201 (2d Cir. 2007) (*emphasis added*). As Defendant has not alleged, nor can it allege, any bad faith, undue delay, or prejudice, TouchTunes merely asserts that amendment would be futile, which Plaintiffs' allegations herein belie.  Specifically, in the event that the Court does not estop TouchTunes from disclaiming its own broad choice of law mandate, finding that New York Law does not apply herein, it would not be futile for Plaintiffs to assert claims based on another state's law.

Further, in arguing that dismissal should proceed with prejudice, TouchTunes further exposes its goal of depriving consumers of any adequate recourse for consumer protection violations. Defendant wants to this Court to simultaneously enforce only those parts of the Terms of Use agreement helpful to its arguments, ignore its mandate of the application of New York

---

[9]     As Plaintiffs contest the disclaimers present in the existing Terms of Use agreement contract, in the event that the contract between the parties is invalid or ineffective, Plaintiffs are entitled to assert an unjust enrichment theory in the alternative. *Grund*, 788 F. Supp. 2d at 252.

law, and deprive Plaintiffs of any further avenues of relief in this or any other court. Certainly,

the law and public policy dictate otherwise.

## **CONCLUSION**

For the foregoing reasons, TouchTune's second motion should be denied.  In the event

the Court finds that the Second Amended Complaint does not adequately state plausible claims

for relief, on any basis, Plaintiffs respectfully requests that dismissal be without prejudice and

that Plaintiffs be afforded an opportunity to cure any such defects.

DATED:      New York, New York
              April 2, 2014

                               Respectfully Submitted,

                               **NEWMAN FERRARA LLP**

                                  *s/ Jeffrey M. Norton*
                               Jeffrey M. Norton
                               jnorton@nfllp.com
                               Courtney F. Chenette
                               cchenette@nfllp.com
                               1250 Broadway, 27th Floor
                               New York, NY 10001
                               Tel: (212) 619-5400
                               Fax: (212) 619-3090

                               *Counsel for Plaintiffs*