UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MICHELLE CLINE and KELLY ENGSTROM, individually
and on Behalf of All Others Similarly Situated,

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-29-2016

Plaintiffs,

-against-                                                            14 Civ. 4744 (LAK)


TOUCHTUNES MUSIC CORPORATION,

Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION


Appearances:


                                Jeffrey Michael Norton
                                NEWMAN FERRARA LLP
                                *Attorney for Plaintiff*


                                Jamie A. Levitt
                                Cameron Andrew Tepfer
                                MORRISON & FOERSTER, LLP
                                *Attorneys for Defendant*

2

LEWIS A. KAPLAN, *District Judge.*

This matter is before the Court on defendant TouchTunes' Motion to Dismiss the Second Amended Class Action Complaint.[1] The Court assumes familiarity with the allegations of the complaint, which are laid out in brief in the Memorandum and Order issued by this Court on January 7, 2015.[2]

## *Discussion*

I.      *Claims Under New York General Business Law*

A.      *Whether Out of State Transactions May Ground a Claim Under New York GBL.*

New York General Business Law ("GBL") Section 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service *in this state*."  (emphasis added).  GBL Section 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service *in this state*." (emphasis added).   TouchTunes contends that neither named plaintiff has stated a sufficient claim under Section 349 or 350, pointing out that neither resides in New York nor alleges that she accessed TouchTunes' services or used a TouchTunes jukebox in New York.

In *Goshen v. Mutual Life Insurance Company of New York*,[3] the New York Court of Appeals faced the question of whether "'hatching a scheme' or originating a marketing campaign in New York in and of itself [could] constitute an actionable deceptive act or practice under the

---

[1]      DI 21.

[2]      DI 18.

[3]      98 N.Y.2d 314 (2002).

statute, or [whether] the statute also require[d] that the consumer be deceived in New York."[4]  The court held that "the transaction in which the consumer is deceived must occur in New York" in order to make out a claim under the GBL.[5]  This, the court reasoned, followed directly from the fact that the phrase "in this state" in Section 349 could modify only "the conduct of any business, trade or commerce [or] the furnishing of any service."[6]  The court cautioned also that "[t]o apply the statute to out-of-state transactions in the case before us would lead to an unwarranted expansive reading of the statute . . . and potentially leading to the nationwide, if not global application of . . . § 349."[7]  But the court's analysis did "not turn on the residency of the parties" because the statute neither was intended to police out-of-state transactions by New York companies nor to bar out-of-state plaintiffs with claims based on New York transactions.[8]  Applying this logic, it held that Florida plaintiffs who bought through a Florida insurance agent and paid premiums in Florida on "vanishing premium" insurance policies could not sue under Section 349 because "any deception took place in Florida."[9]  On the other hand, however, the Court of Appeals sustained the sufficiency of similar Section 349 claims brought by plaintiffs who purchased their policies in New York.[10]

---

[4]      *Id.* at 324.

[5]      *Id.*

[6]      *Id.* at 324-25.

[7]      *Id.* at 325.

[8]      *Id.*

[9]      *Id.* at 325-26.

[10]     *Id.* at 326.

4

In *Cruz v. FXDirectDealer, LLC*,[11] the Second Circuit stated that "two divergent lines of decisions have developed since *Goshen* regarding the proper territorial analysis," one based on where the deceptive conduct took place and the other based on where the transaction took place.[12] These two tests, it said, flowed from different ways in which the New York Court of Appeals phrased its holding within the *Goshen* opinion.[13]  The circuit noted that the two tests are "not mutually exclusive," but opted for the transaction-based test, highlighting *Goshen*'s "admonition that Section 349 was not 'intended to function as a per se bar to out-of-state plaintiffs' claims of deceptive acts leading to transactions within that state.'"[14]  *Cruz* found further support for this approach in its analysis of several post-*Goshen* cases.  It wound up by stating that, "[a]lthough it is a somewhat close call, our reading of *Goshen* and the cases construing it leads us to conclude that a deceptive transaction in New York falls within the territorial reach of section 349 and suffices to give an out-of-state victim who engaged in the transaction statutory standing to sue under section 349."[15]

---

[11]
      720 F.3d 115 (2d Cir. 2013).

[12]
      *Id.* at 122.

[13]
      *Id.* at 122-23.

[14]
      *Id.*; *see also Gorbaty v. Wells Fargo Bank, N.A.*, No. 10-CV-3291, 2014 WL 4742509 (E.D.N.Y. Sept. 23, 2014) (noting that although "the *Cruz* court applied the transactional inquiry to a case brought by out-of-state victims who executed transactions in New York, it did not purport to hold that the 'transaction' rule applied universally").

[15]
      *Cruz*, 720 F.3d at 123; *see also id.* at 123 n.4 (leaving open the possibility that location of the deception, not the transaction, could support a Section 349 claim also).

Given that analysis, the *Cruz* court reversed the district court's dismissal of the plaintiff's claims, holding the allegations sufficient to survive at the pleading stage where the defendant foreign exchange dealer ("FXDD") allegedly: (1) was paid in New York, (2) would not disburse any funds from customer accounts until customers mailed a form to FXDD in New York, (3) required all customer communications be sent to its New York office, and (4) included in its account agreement a governing law and forum selection clause specifying New York as the governing law and requiring that "all suits relating to the Agreement . . . be adjudicated in state or federal courts located in New York."[16] Inasmuch as *Cruz* took full account of the latest analysis by New York's highest court of the territorial reach of GBL Sections 349 and 350, this Court will not depart from the Circuit's conclusion because there is no persuasive post-*Cruz* evidence that the New York Court of Appeals would disagree.[17] But there remain the questions whether and to what extent *Cruz*'s holding is indistinguishable from this case.

TouchTunes users fall into three broad categories.  Some used the TouchTunes App which, the Court infers in the absence of any allegation to the contrary, authorized TouchTunes to charge a credit card as authorized by the App user.  Some entered credit card information into a TouchTunes jukebox wherever they happened to be.  And still others deposited cash into such a jukebox.  If the test focused only on where the deceptive conduct took place, TouchTunes would be correct that the alleged deceptive conduct all took place outside of New York State (at least as to the named plaintiffs and class members who used TouchTunes jukeboxes outside of New York). But *Cruz* instructs that the location of the transaction also may support a claim, so the inquiry does

---

[16]    *Id.* at 123-24.

[17]    *Compare Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 256-57 (S.D.N.Y. 2012).

not end there.  In the cases of App and credit card users TouchTunes apparently "processes customer payments"[18] in New York where it is based, as did the defendant FXDD in *Cruz*.  Second, analogous to FXDD's requirement that a form be sent to its New York office for disbursement of funds, plaintiffs here allege that TouchTunes' music servers are in New York.  So "while the services are accessed nationally and internationally, the physical units are [allegedly] merely portholes to the location of the primary business operation."[19]  Similar to the governing law and forum selection provisions in *Cruz*, the TouchTunes Terms of Use Agreement provides that "any dispute between [the user] and TouchTunes will be governed by the law of the State of New York" and that those disputes must be brought in New York state or federal courts.[20]  And while there does not appear to be an exact analog to FXDD's requirement that all customer communications be sent to New York, it is a fair inference that the users' music selections are transmitted electronically to TouchTunes' New York servers.  Hence, the Court will apply *Cruz* to claims based on use of the TouchTunes App and the purchase of credits at jukeboxes by use of credit cards.

The analysis is different with respect to cash users of the jukeboxes, a category that includes plaintiff Kelly Engstrom.[21]  To be sure, plaintiffs allege that TouchTunes sends employees

---

[18]
DI 19 ¶ 16.

[19]
DI 24 at 16 (Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss the Second Am. Compl.); DI 19 ¶¶ 16.

[20]
DI 19 ¶ 14.

[21]
DI 19 ¶ 95 ("Plaintiff Kelly Engstrom is a Non-App user, who pain in cash for song selections . . . .").

to collect money from the physical jukeboxes.[22]  But they do not allege how or where these funds subsequently are processed.  In any case, the connection between the cash user and New York would be more attenuated even if the cash then were mailed to New York (a supposition that seems highly unlikely) because the payment for services and collection of the cash take place where the jukeboxes are located, many not in New York.[23]  This would leave the only connections between the cash transactions and New York as the governing law and forum selection provision, the location of TouchTunes' servers, and the electronic transmission of the users' music choices.  This case therefore is distinguishable from *Cruz* with respect to the place of payment.  So the question is whether this Court thinks it likely that the New York Court of Appeals, were it faced with this case, would apply Sections 349 and 350 to purchases outside the State of New York by cash users.  In this Court's view, that answer is no.

      *Cruz* itself recognized that the extent of the connection between an allegedly deceptive transaction and the State of New York that is required to come within GBL Sections 349 and 350, even on the somewhat stronger facts of *Cruz*, was a "close call."  Moreover, *Cruz* at least is arguably in significant tension with *Goshen*, which specifically warned against an overly broad reading of the statute's territorial reach.  As the *Goshen* court said:

> "To apply the statute to out-of-state transactions in the case before us would lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and potentially leading to the nationwide, if not global application of General Business Law § 349.  Furthermore, the interpretation out-of-state plaintiffs would have us adopt would tread on the ability of other states to regulate their own markets and

---

[22]

    DI 19 ¶¶ 58-59.

[23]

    Of course, it is much more likely that the cash is deposited in local or regional bank accounts, which would further attenuate the connection to New York.

enforce their own consumer protection laws."[24]

Yet we have here named plaintiffs who used TouchTunes products in Montana and North Dakota and who allegedly were deceived by misrepresentations or omissions they encountered solely within those states. We are left further with a putative class of potentially nationwide, if not global, reach. And we have New York's consumer protection laws said to regulate these commercial transactions in far-flung states and nations where the connections between the alleged deception and New York are somewhat strained.

This Court recognizes that at least one of its colleagues perhaps has taken *Cruz* this far.[25] But I do not construe *Cruz* as holding that the facts alleged in this complaint with respect to cash customers – namely, the ultimate recipient of their out-of-state payments, a governing law-choice of forum provision in a "click-wrap" agreement on out-of-state electronic jukeboxes, and the location of TouchTunes' servers – are legally sufficient to make out a claim under either Section 349 or 350. Accordingly, the motion to dismiss for failure to state a legally sufficient claim will be granted as to Ms. Engstrom, the cash customer, and as to Ms. Cline to the extent she was a cash customer. It will be denied as to Ms. Cline to the extent she was an App user.

B.   *Assuming Out-of-State Transactions Can Be Governed by the GBL, Plaintiffs Adequately Allege Claims under § 349 But Not § 350.*

As discussed above, GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state" while Section

---

24

      *Goshen*, 98 N.Y.2d at 325.

25

      *See Ward v. TheLadders.com,* 3 F.Supp.3d 151, 168 (S.D.N.Y. 2014); *but see Gorbaty v. Wells Fargo Bank, N.A.,* No. 10-cv-3291, 2014 WL 4742509 (E.D.N.Y. Sept. 23, 2014).

9

350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."   To state a claim under either section, a plaintiff must allege three elements:  "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."[26]  The only difference between the two is that Section 350 more narrowly targets deceptive or misleading advertisements, while Section 349 polices a wider range of business practices.  Under both sections, the standard is an objective one – whether the deceptive practice is "likely to mislead a reasonable consumer acting reasonably under the circumstances."[27]

### 1.    Claims under § 349

Plaintiffs' Section 349 claim alleges essentially three[28] separate misleading acts: that (1) App users were not refunded for unplayed songs even though TouchTunes has the technical capability to do so, (2) TouchTunes failed to disclose that venue owners were able to skip paid-for

---

[26]

> *Ward*, 3 F. Supp. 3d at 168 (quoting *Stutman v. Chem. Bank*, 95 N.Y.2d 24 (2000)) (stating the standard for § 349); *accord Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154, 2015 WL 5360022, at *9 (E.D.N.Y. Sept. 14, 2015) (quoting *DeAngelis v. Timberpeg E., Inc.*, 858 N.Y.S.2d 410, 414 (3d Dep't 2008)) (stating the same three elements for § 350). The first element – whether the practice was consumer-oriented – is not in dispute in either the section 349 or 350 claims.

[27]

> *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 557 (S.D.N.Y. 2014) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)).

[28]

> Plaintiffs in fact allege four misleading acts, addressing separately that TouchTunes allegedly fails to disclose in general that venue owners can skip songs and that the Terms of Use misleadingly fail to state this fact.  Logically, however, these allegations are so interrelated that they are better addressed as one.

songs and that the Terms of Use were misleading as to this fact, and (3) TouchTunes misled App users by failing to disclose the expiration dates of credits purchased through the App.

Plaintiffs' first assertion fails because the failure of TouchTunes to refund credits for unplayed songs despite its alleged ability to so was not, in and of itself, misleading.  Plaintiffs have not alleged any facts to suggest that they reasonably expected such a refund, and TouchTunes Terms of Use state that refunds will not be issued for unplayed songs "under any circumstances."  The mere fact that plaintiffs find this particular business practice distasteful does not make it deceptive or misleading.[29]   Plaintiffs have offered no facts that would make the failure to offer refunds a misleading or deceptive practice beyond their repeated, unsupported statement that TouchTunes offers "pay-for-play" jukebox services.

Plaintiffs' second allegedly misleading act, on the other hand, passes muster.   The complaint states that plaintiffs witnessed bartenders or managers at TouchTunes-equipped venues skip songs in the TouchTunes queue.[30]   TouchTunes argues that this requires a conclusion that a reasonable consumer would be well aware that their songs might be skipped.  That argument may be superficially appealing, however it does not hold for consumers who may have made their first TouchTunes purchase prior to witnessing a venue use the skip feature.

TouchTunes further argues that its Terms of Use sufficiently disclosed this fact because they disclosed generally that songs may not play and that consumers will not receive a

---

[29]

     *See, e.g.*, *Leider v. Ralfe*, 387 F. Supp. 2d 283, 296-97 (S.D.N.Y. 2005) (dismissing general allegations of anti-competitive practices as insufficient under § 349).

[30]

     DI 19 ¶¶ 90-93, 96-101.

refund "under any circumstances."[31]  The terms, however, did not disclose the built-in functionality that allowed venue owners to deliberately skip songs.  Rather, they stated that songs may not play due to "factors, including the inherent unreliability of the Internet" or the "inaccessibility or technical failure of my TouchTunes."[32]  Although this disclosed that songs might not play, it perhaps could have led to a misleading impression that songs might not play only by reason of technical failures beyond any party's volitional control.  At the pleading stage, the Court cannot say that this would not have been materially misleading to a reasonable consumer.[33]

Next, plaintiffs claim that users were misled by TouchTunes' failure to disclose *when* credits purchased through the App would expire.  The Terms of Use stated that "if you apply your credits to a jukebox but do not use those credits to request song plays, your credits will expire after a specified period of time.  If your credits expire they will not be reapplied to your account."[34]  The

---

[31]

DI 25 at 7.

[32]

DI 19 ¶ 75.

[33]

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) ("A court may make [the determination of whether an act is materially misleading to a reasonable consumer] as a matter of law, although usually such a determination is a question of fact." (internal citations omitted)).

[34]

DI 19 ¶ 64.  Plaintiffs claim also that this failure violates federal regulations governing gift cards, 12 C.F.R. § 1005.20, which requires that expiration dates on gift cards and similar instruments be clearly marked and, generally, not less than five years.  It is not clear that TouchTunes credits fall within the ambit of these requirements, which specifically exclude, among others, instruments that are "[r]eloadable and not marketed or labeled as a gift card or gift certificate."  12 C.F.R. § 1005.20(b)(2).  However, the Court need not resolve this because Plaintiffs do not state this as a separate claim and because the Court finds plaintiffs' allegations are sufficient to survive a motion to dismiss on their own merits.

Terms did not, however, specify what the expiration time period was.[35]  Where customers were

made aware of the fact that credits will expire but were given no indication of the length of the

expiration period, they cannot claim to have been misled.[36]  Were there language that falsely

suggested the expiration period was longer than it was in fact, that would be a very different

situation.  But that is not what plaintiffs have alleged here.


2.   *Claims Under Section 350*

This Court's January 7, 2015 Memorandum and Order stated that plaintiffs' First

Amended Complaint contained "no allegations of any specific advertising by TouchTunes in New

York or anywhere else."[37]  Despite this explicit warning, plaintiffs did not correct this defect.  Once

again, the Second Amended Complaint fails to mention even a single specific advertisement,

misleading or otherwise.  Therefore, this claim must fail[38] and, because the Court exercised its

---

[35]

> Defendant urges the Court to take judicial notice of a screenshot of the App included in its memorandum of law in support of its motion to dismiss, which TouchTunes claims is proof that it discloses the expiration date for credits.  However, "plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a *necessary prerequisite* to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (second emphasis added).  Because there is no evidence that the App displayed this message during the time period at issue in this matter, it is not at all clear that plaintiffs relied on this or any similar screenshot in drafting their complaint.  The Court therefore will not consider the screenshot on this motion to dismiss.

[36]

> *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("[T]here can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed...." (quoting *Broder v. MBNA Corp.*, 281 A.D.2d 369, 371, 722 N.Y.S.2d 524 (1st Dep't 2001))).

[37]

> DI 18 at 3.

[38]

> *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 404-05 (S.D.N.Y. 2010) ("[Plaintiff] provides no examples of the alleged deceptive advertising or statements by Hotels.com, and,

discretion already in granting leave to file a Second Amended Complaint, will be dismissed with prejudice.[39]

## II.    Breach of the Duty or Implied Covenant of Good Faith and Fair Dealing

Plaintiffs contend that TouchTunes breached the duty of good faith and fair dealing by failing to disclose, in its Terms of Use, that the hardware gives venue owners the capability to skip songs.[40] Both parties concede that the Terms of Use are a binding contract.[41] In addition to the express terms of a contract, "New York law implies a covenant of good faith and fair dealing, "pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract."[42] This covenant applies, however, only "where an implied promise is so interwoven into the contract as to be necessary for effectuation of the purposes of the contract. For this to occur, a party's action must directly violate an obligation that may be presumed to have been intended by the parties."[43]  Here, the contract

---

even on a motion to dismiss, this Court need not accept her conclusory statements.").

[39]

*See, e.g.*, *Knife Rights, Inc. v. Vance*, No. 13-cv-4840, 2015 WL 5559751, at *9 (2d Cir. Sept. 22, 2015) (finding no abuse of discretion in denying leave to file second amended complaint where amendment would be futile).

[40]

DI 19 ¶¶ 117-19.

[41]

*See, e.g.*, DI 27 at 7 (Additional Mem. of Law in Supp. of TouchTunes Music Corp.'s Mot. to Dismiss the Second Amend. Compl.) (conceding that "Plaintiffs have sufficiently alleged the existence of a binding contract: the Terms of Use").

[42]

*Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006) (internal quotation and citation omitted).

[43]

*Id.*

14

disclosed that songs might not play and that no refunds would be offered.  The failure to disclose all of the *reasons* the song might not play cannot be said fatally to have undermined an implied promise essential to the contract.  This claim therefore must be dismissed.

III.    *Unjust Enrichment*

   Plaintiffs also allege unjust enrichment in the alternative to their breach of good faith and fair dealing claim.[44]

   Unjust enrichment is a quasi-contract theory of recovery, "an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties concerned."[45] Recovery on a theory of unjust enrichment, however, is unavailable "[w]here the parties executed a valid and enforceable written contract governing a particular subject matter."[46]  Because there is a written contract which discloses that songs might not be played and no refunds would issue, there can be no recovery for unjust enrichment.

---

[44]
   DI 19 ¶¶ 120-25; DI 24 at 31 (describing unjust enrichment claim as being "[i]n [t]he [a]lternative").

[45]
   *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009).

[46]
   *Id.*

15

*Conclusion*

For the foregoing reasons, defendant's motion to dismiss the second amended complaint [DI 21] is granted to the extent that the action is dismissed insofar as it is brought on behalf of Ms. Engstrom and dismissed insofar as it is brought on behalf of Ms. Cline except insofar as she seeks recovery under GBL Section 349 with respect to her transaction as a user of the TouchTunes App.

SO ORDERED.

Dated:        September 29, 2016

_____
Lewis A. Kaplan
United States District Judge