UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELLE CLINE and KELLY ENGSTROM, Individually and On Behalf Of All Others Similarly Situated,<br><br>           Plaintiffs,<br><br>   v.<br><br>TOUCHTUNES MUSIC CORPORATION,<br><br>           Defendant. | Index No.: 14 Civ. 4744 (LAK) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, REIMBURSEMNT OF EXPENSES, AND PLAINTIFF'S INCENTIVE AWARD**

**NEWMAN FERRARA LLP**
Jeffrey M. Norton
1250 Broadway, 27th Floor
New York, New York 10001

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff Michelle Cline ("Plaintiff") respectfully submits this memorandum of law in support of her Motion for Attorneys' Fees, Expenses, and Plaintiff's Incentive Award.

## PRELIMINARY STATEMENT

Following hard-fought litigation and extensive arm's-length negotiations, the parties reached a settlement which addressed the claims deemed viable by the Court and took into account the benefits and risks associated with continued litigation. The result was that Plaintiff was able to secure a beneficial settlement for all members of the proposed settlement class (the "Class"). The Settlement, as fully described in the parties' Joint Motion for Final Approval, filed contemporaneously herewith, provides that, in exchange for a release of all claims that were or could have been brought in this action, TouchTunes will provide Class members with account credit to use in connection with a TouchTunes digital jukebox. In addition, TouchTunes agreed to clarify its Terms of Use to make it clear to TouchTunes users that a TouchTunes mobile App user's selected song might not play because a user's selected song may be skipped using a TouchTunes-branded remote control. TouchTunes further agreed to cover the costs of the notice program and settlement administration.

To achieve such a settlement, Plaintiff's counsel was required to undertake substantial litigation efforts. After its preliminary investigation, Plaintiff's counsel filed the original complaint on June 26, 2014, on behalf of Plaintiff (together with former named plaintiff Kelly Engstrom). (ECF No. 2). Thereafter, on July 23, 2014, Plaintiff's counsel filed the First Amended Complaint following direction from the Court with regard to certain jurisdictional allegations. (ECF No. 7). On October 22, 2014, Defendant moved to dismiss the First Amended Complaint and the parties fully briefed the same. (ECF Nos. 12, 16, 17). On January 7, 2015, the

Court dismissed the First Amended Complaint with leave to replead. (ECF No. 18). On January 28, 2015, Plaintiff filed a Second Amended Complaint. (ECF No. 19). On March 3, 2015, Defendant filed a Motion to Dismiss the Second Amended Complaint, which was fully briefed by the parties, including additional Court-ordered supplemental briefing. (ECF No. 22, 24, 25, 27, 28). On September 29, 2016, the Court issued an Opinion and Order granting in part and denying in part TouchTunes' March 3, 2015 Motion to Dismiss the Second Amended Complaint. (ECF No. 31).

Following the Court's decision, the parties engaged in extensive, arm's-length settlement negotiations, which included the informal exchange of information, and ultimately reached a Settlement in early 2017. Since then the Parties have worked to agree on the terms of a written agreement, the Class Notice and the Notice Program and procedures. After having agreed upon all material terms of the Settlement, Defendant agreed to not oppose a combined request for attorney's fees and reimbursement of litigation expenses not in excess of $100,000, and an incentive award for the Plaintiff not in excess of $2,000. Accordingly, in light of the benefit achieved and Plaintiff's counsel's efforts in reaching the Settlement, Plaintiff respectfully requests that her motion for attorney's fees and reimbursement of litigation expenses in the amount of $100,000, in addition to an incentive award in the amount of $2,000, be granted.

## ARGUMENT

### I. Plaintiff's Attorneys' Fee and Expense Request is Reasonable

#### A. Amount Requested is Reasonable Because it Reflects a Negative Lodestar, was Agreed to, and Will Not Reduce Benefits to Class

"Under Fed.R.Civ.P. 23(h), in a 'certified class action, court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." *In re Sinus Buster Prod. Consumer Litig.*, No. 12-CV-2429, 2014 WL 5819921, at *14 (E.D.N.Y.

Nov. 10, 2014). The Court has broad discretion to evaluate the reasonableness of proposed attorneys' fees. *See In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 148 F. Supp. 3d 303, 306 (S.D.N.Y. 2015). Further, courts typically allow counsel to recover reasonable out-of-pocket expenses incurred in the course of the litigation. *See Aboud v. Charles Schwab & Co.*, No. 14 CIV. 2712 PAC, 2014 WL 5794655, at *5 (S.D.N.Y. Nov. 4, 2014) (citing *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F.Supp.2d 180, 183 n. 3 (S.D.N.Y.2003)).

In the Second Circuit, attorney's fees can be calculated using either the lodestar or percentage of the fund method. *See Schwartz v. Intimacy in New York, LLC*, No. 13 CV 5735 (PGG), 2015 WL 13630777, at *5 (S.D.N.Y. Sept. 16, 2015). Where the benefit involves both non-monetary relief and relief not subject to a common fund, the lodestar method generally is the appropriate metric. *Id.*[1] Where the requested fee represents a discount (or "negative lodestar"), there is a presumption of reasonableness. *See Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 214 CM, 2012 WL 2505644, at *10 (S.D.N.Y. June 27, 2012).[2]

In addition, where the amount of attorneys' fees and reimbursement of expenses are agreed to, will be paid by the defendant, and will not reduce a common fund, the Court's fiduciary role is significantly diminished. *Id.* at *9 (the danger of conflicts between attorneys and class members is diminished where the fee award will not reduce the recovery to the class); *see*

---

[1] The "lodestar" method involves multiplying the hours billed by an appropriate hourly rate. *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 CV 7493(VB), 2013 WL 4080946, at * 15 (S.D.N.Y. May 30, 2013). Once the initial rate has been determined, a court can in its discretion increase the lodestar by applying a "multiplier" based on the "risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014) (internal quotation marks and citations omitted).

[2] This Court has indicated that negative lodestar multipliers (those less than 1) are a "strong indication of the reasonableness of the [requested] fee." *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *13 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (quoting *In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.,* 909 F.Supp.2d 259, 271 (S.D .N.Y. 2012)); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695CM, 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007) (noting that a negative lodestar '"cross-check' unquestionably supports" the reasonableness of a requested fee); *see also In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009) (explaining that when there is a negative lodestar multiplier, "[t]here is […] no real danger of overcompensation").

*also Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 243 (E.D.N.Y. 2010) (same); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 CIV. 5173, 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008) (same); *McBean v. City of N.Y.*, 233 F.R.D. 377, 392 (S.D.N.Y.2006) (same).

Here, Plaintiff requests, and TouchTunes has agreed to pay, $100,000, inclusive of attorney's fees and unreimbursed litigation expenses. This sum will not come from a common fund and will not reduce the benefit conferred to members of the Class. With regard to fees alone, Plaintiff's counsel expended over 318 hours from before the commencement of this action in June 2014, to October 19, 2017 (*i.e.*, the filing of the parties Notice of Settlement and Joint Motion for Approval of Notice Program (ECF No. 35)), resulting in overall lodestar of approximately $181,645.00.[3] With regard to unreimbursed litigation expenses, Plaintiff's counsel has incurred over $10,542.96.[4] Accordingly, even without the expense portion, the requested amount is reasonable and represents a significant discount (*i.e.*, negative lodestar) in proportion to the time, effort, and resources expended.

### B. Amount Requested is Reasonable Based on Second Circuit Factors

In addition to the method used to calculate attorneys' fees, the amount requested by Plaintiff is reasonable in light of the guiding criteria in this Circuit. *See Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000). In *Goldberger*, the Second Circuit instructed courts look to a "variety of factors including, *inter alia:* (a) the time and labor expended by counsel; (b) the magnitude and complexities of the litigation; (c) the risk of the litigation; (d) the quality of

---

[3]   *See* Lodestar Table included in the Declaration of Jeffrey M. Norton in Support of the parties' Join Motion for Final Approval of Class Settlement, and Plaintiff's Motion for Attorneys' Fees and Expenses, and Plaintiff's Incentive Award ("Norton Decl."). Total attorney time *excludes* paralegal and administrative time, and time entered relating to this motion and the parties joint motion for final approval of the settlement.
[4]   *See* Expense Table included in the Norton Decl. Total expenses *exclude* administrative costs and legal and online research.

representation; (e) the requested fee in relation to the settlement; and (f) public policy considerations." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370–71 (S.D.N.Y. 2002) (citing *Goldberger,* 209 F.3d at 50). Here, Plaintiff's request is reasonable in light of the lodestar method and the *Goldberg* factors.

### 1. The Time and Labor Expended by Plaintiff's Counsel

As noted above, the amount of time Plaintiff's counsel has expenses litigating this case and negotiating the Settlement is significant. Plaintiff's counsel's efforts included a considerable pre-suit investigation, including work with consultants, drafting and amending the pleadings, and vigorously briefing and opposing multiple motions to dismiss. In addition, throughout the settlement process, Plaintiff's counsel engaged in informal discovery and information exchange with counsel for TouchTunes. Finally, Plaintiff negotiated a fee that, while resulting in a negative lodestar multiplier, took into account the benefits achieved for the Class, the post-motions to dismiss composition of the action, and the risks and benefits of continued litigation. Under these circumstances, the fee request is more than reasonable and in line with previous awards by this Court.

### 2. The Magnitude and Complexities of the Litigation

It is well understood by this Court that "'[c]lass actions have a well deserved reputation as being most complex."' *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 669 (S.D.N.Y. 2015) (internal quotations omitted) (quoting *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998)). This matter has proven to be no different. Indeed, the law of the case has been vigorously contested by both parties through a series of motions to dismiss. Fully litigated issues have included subject matter jurisdiction (*i.e.*, the Class Action Fairness Act), New York General Business Law § 349, breach of covenant of good faith and fair dealing,

and unjust enrichment. The wide range of legal issues Plaintiff litigated in this matter, especially in the context of a nationwide class action, support the granting of Plaintiff's requested fee.

### 3. The Risk of the Litigation

Plaintiff's counsel had undertaken significant risks in initiating this suit, including (1) taking the matter on a contingency fee basis, and (2) the high bar for the factual and legal showings necessary to prevail. Indeed, "[t]he Second Circuit has recognized that the risk associated with a case undertaken on a contingent basis is an important factor in determining an appropriate fee award." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *21 (S.D.N.Y. Sept. 9, 2015) (quoting *City of Providence,* 2014 WL 1883494, at *14); *see Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 438–39 (S.D.N.Y. 2014) ("The fact that counsel here worked on contingency clearly entitles them to some premium for the risk incurred."); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 CV 4318 HB, 2001 WL 709262, at *6 (S.D.N.Y. June 22, 2001) ("Contingency risk is the principal […] factor courts should consider in their determination of attorneys fees.").

Second, Plaintiff's fee application is reasonable based on the litigation risks particular to this matter. Specifically, Plaintiff has taken into account the uncertain outcome and risk of any litigation, especially in a complex case such as this, as well as the difficulties and delays inherent in such litigation. Among other things, Plaintiff would need to overcome certain provisions of the TouchTunes' Terms of Use, defenses to the remaining New York General Business Law § 349 violation asserted in the Action, as well as the risks and costs associated with pursuing this matter through contested class certification, summary judgment, and trial. The Settlement mitigates these risks, offering Plaintiff and members of the Class meaningful relief in the form of

account credits and revisions to TouchTunes' Terms of Use. As such, Plaintiff's requested fee is reasonable and justified based on the risk of litigating this matter.

### 4. The Quality of Representation

Plaintiff's counsel, Newman Ferrara, is a high quality firm with considerable experience in this type of class and complex litigation.[5] In this matter, Plaintiff's counsel has been able to secure a respectable settlement providing benefits to many who would otherwise likely received nothing.

Similarly, the Court should consider the experience and reputation of opposing counsel. *See In re Top Tankers, Inc. Sec. Litig.*, No. 06 CIV. 13761 (CM), 2008 WL 2944620, at *16 (S.D.N.Y. July 31, 2008); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."). Here, TouchTunes was represented by the highly reputable firm of Morrison & Foerster who litigated this matter vigorously through three motions to dismiss and engaged in hard-fought negotiation efforts with Plaintiff's counsel. As such, the quality of representation of both parties warrants Plaintiff's requested fee.

### 5. The Requested Fee in Relation to the Settlement

The requested fee is reasonable in light of the Settlement and adequately reflects the quantity and quality of work provided by counsel. The proposed Settlement provides a credit (worth up to $3) to each Class member, of which there are estimated to be 451,723.[6] In addition to the distribution of account credits to members of the Class, TouchTunes has agreed to amend

---

[5] *See* Newman Ferrara Firm Bio annexed as Exhibit A to the Norton Decl.
[6] There were 285,050 records in the Potential Claims Credit Sub-Class List, and 166,673 records in the Automatic Credit Sub-Class List, totaling 451,723 potential class members. *See* Declaration of Jennifer M. Keough Regarding Notice Administration.

its Terms of Use to clarify that TouchTunes mobile App user's selected song might not play because a user's selected song may be skipped using a TouchTunes-branded remote control. This functionality was previously undisclosed and was the Court's primary basis for sustaining Plaintiff's § 349 claim. Finally, Plaintiff's counsel persuaded TouchTunes to assume the significant costs associated with notice and administration of the Settlement. These monetary and non-monetary benefits are substantial, and justify Plaintiff's requested fee.[7]

### 6. Public Policy Considerations

Finally, "[p]ublic policy favors the award of reasonable attorneys' fees in class action settlements." *Jermyn*, 2012 WL 2505644, at *12; *see also In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *17 ("Public policy favors reasonable attorney fee awards to encourage attorneys to prosecute merit-based class actions on a contingent fee basis."). As is especially true in this matter, "[d]ue to the dispersed, and relatively small, losses among a large pool of [consumers], the class action mechanism and its associated percentage-of-recovery fee award solve the collective action problem otherwise encountered by which it would not be worthwhile for individual [consumers] to take the time and effort to initiate the action." *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

## II. Plaintiff's Requested Incentive Award is Reasonable

Plaintiff's request for an incentive award of $2,000 is reasonable and well within the range of incentive awards given to class representatives by this Court. This Court has recognized that "class representatives play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny." *Asare v. Change Grp. of New York, Inc.*, No. 12 CIV. 3371 CM, 2013 WL 6144764, at *14 (S.D.N.Y. Nov. 18, 2013). "Incentive awards are not uncommon

---

[7] Moreover, as noted above, this Court has acknowledged that if "money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members." *McBean*, 233 F.R.D. at 392.

in class action cases and are within the discretion of the court." *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (quoting *Ortiz v. Chop't Creative Salad Co.*, 89 F.Supp.3d 573, 580 (S.D.N.Y.2015)).

Plaintiff's proposed incentive award is well within the normal range of awards granted by this Court. *See Dial Corp. v. News Corp.*, 317 F.R.D. 426, 439 (S.D.N.Y. 2016) ("Awards on an individualized basis have generally ranged from $2,500 to $85,000."). For example, in *Gattinella v. Kors*, No. 14CV5731, 2016 WL 690877, at *2 (S.D.N.Y. Feb. 9, 2016), the Court awarded the plaintiff an incentive award of $2,500 for "(1) submitting to interviews with Class Counsel; (2) locating and forwarding relevant responsive documents and information; and (3) participating in conferences with Class Counsel." Here, Plaintiff engaged in identical behavior. Plaintiff maintained regular communication with counsel and aided counsel in fact gathering and case development. Additionally, as with attorneys' fees, Plaintiff's incentive award will be paid by Defendant directly, not from the common fund. Courts have looked favorably on incentive awards that do not diminish the common fund. *See, e.g.*, *Dupler*, 705 F. Supp. 2d at 246 (E.D.N.Y. 2010). Accordingly, the Court should grant Plaintiff's request for an incentive award of $2,000.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that the Court should approve an award of fees and expenses to Plaintiff's counsel in the amount of $100,000.00 and an incentive award to Plaintiff in the amount of $2,000.

DATED: New York, New York
March 9, 2018

                                        Respectfully submitted**,**

**NEWMAN FERRARA LLP**

   *s/ Jeffrey M. Norton*
Jeffrey M. Norton
1250 Broadway, 27th Floor
New York, New York 10001
Telephone: (212) 619-5400
Facsimile: (212) 619-3090
jnorton@nfllp.com